**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC. and BAXTER HEALTHCARE CORPORATION, | ) ) ) | No. 08-CV-2389 |
| Plaintiffs, | ) ) ) | Hon. Blanche M. Manning Presiding Judge |
| v. | ) | |
| FRESENIUS MEDICAL CARE HOLDINGS, INC. and FRESENIUS USA, INC., | ) ) ) | Hon. Martin C. Ashman Magistrate Judge |
| Defendants. | ) ) ) | |

## PLAINTIFFS' ANSWERS TO DEFENDANTS' COUNTERCLAIMS

Plaintiffs/Counter-Defendants Baxter International, Inc. and Baxter Healthcare Corporation (collectively, "Baxter" or "Plaintiffs"), by their attorneys, hereby respond to the Counterclaims filed by Defendants/Counter-Plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. (collectively, "Fresenius" or "Defendants"). Baxter specifically answers the allegations of the Counterclaims as follows. To the extent any allegations of Fresenius' Counterclaims are not admitted, they are specifically denied.

## INTRODUCTION

### The Parties

153.   Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America is a corporation organized and existing under the laws of New York with its principal place of business in Waltham, Massachusetts.

**ANSWER:** Baxter admits the allegation in Paragraph 153 that Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America is a corporation organized and existing under the laws of New York with its principal place of business in Waltham, Massachusetts.

154.    Fresenius USA, Inc. is a corporation organized and existing under the laws of Massachusetts with its principal place of business in Walnut Creek, California. Fresenius USA, Inc. is a wholly-owned subsidiary of Fresenius Medical Care Holdings, Inc.

**ANSWER:**    Baxter admits the allegation in Paragraph 154 that Fresenius USA, Inc. is a corporation organized and existing under the laws of Massachusetts with its principal place of business in Walnut Creek, California. Baxter further admits that Fresenius USA, Inc. is a wholly-owned subsidiary of Fresenius Medical Care Holdings, Inc.

155.    The Fresenius family of companies has had a long involvement in healthcare, beginning in the late 18th century as pharmacists; Dr. E. Fresenius founded a small manufacturing operation for pharmaceuticals in 1912, which has evolved into the current company focused largely on dialysis, medical devices and nutritional therapies. In 1966 Fresenius began building its presence in dialysis and now Fresenius has more than 2,000 clinics worldwide and treats more than 150,000 patients annually.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 155 of the Counterclaims and thus denies the same.

156.    Upon information and belief, Baxter Healthcare Corporation is a Delaware corporation with its principal place of business in Deerfield, Illinois.

**ANSWER:**    Baxter admits the allegation in Paragraph 156 that Baxter Healthcare Corporation is a Delaware corporation with its principal place of business in Deerfield, Illinois.

157.    Upon information and belief, Baxter International, Inc. is a Delaware corporation with a principal place of business in Deerfield, Illinois. Collectively, Baxter Healthcare Corporation and Baxter International, Inc., will be referred to as "Baxter" or "Plaintiffs."

**ANSWER:**    Baxter admits the allegation in Paragraph 157 that Baxter International, Inc. is a Delaware corporation with a principal place of business in Deerfield, Illinois.

158.    Baxter is not a true innovator in the field of hemodialysis. Baxter's first attempt to commercially manufacture an artificial kidney actually did not immediately receive widespread acceptance in the medical community. Instead, as admitted by Baxter's trial counsel in earlier litigation between the parties, it is actually Fresenius' co-CEO, Dr. Ben Lipps, rather than anyone affiliated with Baxter, who is the "grandfather, godfather of [hemo]-dialysis."

**ANSWER:**    Baxter denies each and every allegation in Paragraph 158 of the Counterclaims, including Fresenius' characterization of Baxter's counsel's statement.

3

159.    Neither Baxter's HomeChoice peritoneal dialysis cycler, nor any other peritoneal dialysis cycler developed by Baxter, was the very first commercially available automated peritoneal dialysis ("APD") instrument. Upon information and belief, the first commercially-available APD cyclers were developed and sold in the mid-1970s, such as the Drake Willock 6010 and the AMP 80/2 cyclers. Baxter did not introduce any automated peritoneal cycler until at least the mid-1980s. Upon information and belief, Deka Research & Development, rather than Baxter, was primarily responsible for the design of the HomeChoice device.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 159 of the Counterclaims and thus denies the same.

160.    Baxter's System 1000 hemodialysis device was developed by a predecessor company called Althin. Upon information and belief, the engineers at Althin obtained and reviewed then-available hemodialysis machines from competitors during the course of developing the System 1000, including hemodialysis machines made by Fresenius.

**ANSWER:**    Baxter admits that the System 1000 hemodialysis device was developed in-part by Althin. Because Fresenius has failed to identify the engineers it refers to in Paragraph 160 of the Counterclaims, Baxter cannot determine the truthfulness of the remaining allegations in Paragraph 160 thus denies the same.

161.    Baxter is not a significant participant in the field of hemodialysis. Upon information and belief, although the Renal segment of Baxter's business is the smallest of its three business segments – "BioScience," "Medication Delivery" and "Renal" – the Renal segment had over $2.2 billion in sales in 2007 alone. Of Baxter's sales in the Renal segment, only approximately 25% are related to hemodialysis, and despite Baxter's decision in 2005 to discontinue the manufacture of hemodialysis machines, Baxter reported to its shareholders that there was no significant impact on revenue. Further, Baxter has indicated that its decision to stop manufacturing hemodialysis instruments is consistent with its strategy to focus resources on peritoneal dialysis therapies.

**ANSWER:**    Baxter denies that it is not a significant participant in the field of hemodialysis. Baxter admits that it has three business units and that the Renal segment had approximately $2.2 billion in sales in 2007. Baxter admits that its decision to stop self-manufacturing machines was consistent with the company's strategy to optimize and improve the performance of its HD business AND focus resources on peritoneal dialysis therapies and home therapies, such as home hemodialysis. Additionally, because Fresenius has failed to identify the

documents which are the bases for the remaining allegations in Paragraph 161 of the Counterclaims, Baxter lacks sufficient information to determine the truthfulness of those remaining allegations and thus denies the same.

162.    Baxter is not actually a "leading innovator" in any field since, upon information and belief, Baxter has followed a historical pattern of acquiring companies that have already developed medical and pharmaceutical technologies.  Upon information and belief, Baxter is not recognized in the industry as a "leading innovator."

**ANSWER:**    Baxter admits the allegation in Paragraph 162 that it actively seeks to expand its product offering by acquiring new companies with developed medical and pharmaceutical technologies.  Baxter denies each and every remaining allegation in Paragraph 162 of the Counterclaims.

163.    To the extent that Baxter may have received and/or acquired any patents related to healthcare, the mere fact that the Patent Office may have issued patents to Baxter or its predecessor companies does not necessarily mean that such patents are valid, or enforceable, or improved worldwide healthcare, or that the patents asserted in this lawsuit are valid, or enforceable or improved healthcare.

**ANSWER:**    Any patent issued by the Patent Office is presumed valid and useful by statute, therefore Baxter denies each and every allegation in Paragraph 163 of the Counterclaims.

### Prior Litigation Between Fresenius and Baxter

164.    There has been a prior lawsuit between Fresenius and Baxter (the previous Hemodialysis Case).  In that prior suit, every single validity issue concerning the patents in suit was decided by a unanimous jury in Fresenius' favor in a verdict that was erroneously overturned by the district court on JMOL, and is now on appeal before the Federal Circuit for reinstatement.  In addition, numerous claims of the previous patents-in-suit have been finally rejected as unpatentable by the PTO in currently-pending reexamination proceedings.

**ANSWER:**    Baxter admits that Fresenius and Baxter were involved in a prior lawsuit. Baxter admits that the District Court granted Baxter's motion for a JMOL that Fresenius failed to present clear and convincing evidence of the invalidity of the patents in suit and therefore overturned the jury verdict.   Baxter admits that the Hemodialysis Case is now on appeal before the Federal Circuit.  Baxter admits that the patents from the Hemodialysis case are involved in

on-going reexamination proceedings and that certain claims have been rejected during reexamination thus far, but denies that such rejections are proper. Baxter further denies each and every remaining allegation in Paragraph 164 of the Counterclaims.

165.    Three of the patents in the previous Hemodialysis Case are being reexamined by the PTO, and the PTO has determined in each case that a substantial new question of patentability was raised by the respective reexamination request. Specifically, the PTO has (i) issued an office action rejecting claims 7 and 10 of U.S. Patent No. 5,744,027 ("the '027 patent") as anticipated and claim 11 of the '027 patent as obvious — all the claims on which Fresenius sought reexamination; (ii) the PTO has issued a final rejection that claims 12-19 and 26-34 of U.S. Patent No. 5,247,434 are invalid as obvious (from which rejection Baxter has filed an untimely Notice of Appeal); and (iii) the PTO has also issued a final rejection that claims 1-25 in the reexamination of U.S. Patent No. 6,284,131 are invalid as obvious – once again, rejecting all the claims on which Fresenius sought reexamination (from which rejection Baxter has also filed an untimely Notice of Appeal).

**ANSWER:**    Baxter admits that the PTO is currently reexamining three of the patents from the previous Hemodialysis Case. Baxter admits that certain claims have been rejected during reexamination thus far, but denies that such rejections are proper. Baxter further denies each an every remaining allegation in Paragraph 165 of the Counterclaims.

166.    In the previous Hemodialysis Case, Baxter dropped any claim that Fresenius had willfully infringed or copied the patents asserted long before trial.

**ANSWER:**    Baxter admits that it withdrew its claim for willful infringement for the specific patents involved in the Hemodialysis Case in exchange for Fresenius withdrawing one of its affirmative defenses. Baxter denies that stipulation has any effect on the present infringement suit which relates to four new patents.

167.    The injunction order issued by the district court in the previous Hemodialysis Case specifically permits Fresenius' 2008K hemodialysis machines to stay on the market and in use at hemodialysis clinics, and will, by its own terms, not enjoin any use of such machines until January 1, 2009. The district court in the previous Hemodialysis Case found the public interest was best served by the continued, uninterrupted supply of Fresenius' 2008K hemodialysis machine, and attempted to craft an injunction order to ensure such supply. The district court in the previous Hemodialysis Case found that there was a strong public interest in the continued availability of the 2008K, and therefore delayed the imposition of a permanent injunction until January 1, 2009 in the belief that such time would allow redesign, as well as FDA approval, and commercial introduction of a redesigned device. However, the effective date for the permanent

injunction chosen by the district court in that case does not allow adequate time for the redesigned device to be reviewed and approved by the FDA, should such regulatory review be necessary.

**ANSWER:**    Baxter admits that the district court's injunction order in the previous Hemodialysis Case does not enjoin Fresenius' use of the 2008K hemodialysis machines until January 1, 2009.  Baxter denies each and every remaining allegation in Paragraph 167 of the Counterclaims, including Fresenius' summary of the district court's order.

168.    There is another co-pending case between Fresenius and Baxter, called the "Peritoneal Dialysis Case."  Baxter filed the co-pending "Peritoneal Dialysis Case" in 2007.  The Peritoneal Dialysis Case deals with different technology from the patents-in-suit in the instant case.  There has not yet been any decision on infringement, validity or enforceability in such case.

**ANSWER:**    Baxter admits the allegations in Paragraph 168 of the Counterclaims.

### Jurisdiction and Venue

169.    This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**    Baxter admits the allegations in Paragraph 169 of the Counterclaims.

170.    Plaintiffs have consented to personal jurisdiction by commencing an action for patent infringement in this judicial district, as set forth in Plaintiffs' Complaint.

**ANSWER:**    Baxter admits the allegations in Paragraph 170 of the Counterclaims.

171.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

**ANSWER:**    Baxter admits the allegations in Paragraph 171 of the Counterclaims.

172.    An actual case or controversy exists between Plaintiffs and Defendants as to the validity, infringement and enforceability of the patents-in-suit as evidenced by the Complaint and Answer in this action.

**ANSWER:**    Baxter admits the allegations in Paragraph 172 of the Counterclaims.

### Count 1
(Declaration of Non-infringement of United States Patent No. 7,264,730)

173.    Fresenius has not infringed and does not infringe, either directly or indirectly, any valid claim of the '730 patent.

**ANSWER:** Baxter denies each and every allegation in Paragraph 173 of the Counterclaims.

### Count 2
(Declaration of Non-infringement of United States Patent No. 7,303,680)

174.    Fresenius has not infringed and does not infringe, either directly or indirectly, any valid claim of the '680 patent.

**ANSWER:** Baxter denies each and every allegation in Paragraph 174 of the Counterclaims.

### Count 3
(Declaration of Non-infringement of United States Patent No. 7,318,892)

175.    Fresenius has not infringed and does not infringe, either directly or indirectly, any valid claim of the '892 patent.

**ANSWER:** Baxter denies each and every allegation in Paragraph 175 of the Counterclaims.

### Count 4
(Declaration of Non-infringement of United States Patent No. 7,351,340)

176.    Fresenius has not infringed and does not infringe, either directly or indirectly, any valid claim of the '340 patent.

**ANSWER:** Baxter denies each and every allegation in Paragraph 176 of the Counterclaims.

### Count 5
(Declaration of Invalidity of United States Patent No. 7,264,730)

177.    The '730 patent is invalid because it fails to satisfy one or more of the requirements of 35 U.S.C. § 101, *et seq.*, including, without limitation, sections 101, 102, 103 and 112.

**ANSWER:** Baxter denies each and every allegation in Paragraph 177 of the Counterclaims.

### Count 6
(Declaration of Invalidity of United States Patent No. 7,303,680)

178.    The '680 patent is invalid because it fails to satisfy one or more of the requirements of 35 U.S.C. § 101, et seq., including, without limitation, sections 101, 102, 103 and 112.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 178 of the Counterclaims.

### Count 7
(Declaration of Invalidity of United States Patent No. 7,318,892)

179.    The '892 patent is invalid because it fails to satisfy one or more of the requirements of 35 U.S.C. § 101, et seq., including, without limitation, sections 101, 102, 103 and 112.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 179 of the Counterclaims.

### Count 8
(Declaration of Invalidity of United States Patent No. 7,351,340)

180.    The '340 patent is invalid because it fails to satisfy one or more of the requirements of 35 U.S.C. § 101, et seq., including, without limitation, sections 101, 102, 103 and 112.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 180 of the Counterclaims.

### Count 9
(Declaration of Unenforceability Due to Fraud on the Patent Office
During the Prosecution of the '730 Patent)

181.    The '730 patent is unenforceable due to inequitable conduct in its prosecution before the U.S. Patent and Trademark Office ("the PTO"), as more particularly alleged below.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 181 of the Counterclaims.

182.    The Application which led to the issuance of the '730 patent was filed on June 13, 2003 as Application No. 10/461,237 ("the '237 application"). The '237 application claimed priority to April 19, 1991 through a series of patents and applications that includes two of the patents at issue in the previous Hemodialysis Case – United States Patent No. 5,744,027 and

United States Patent No. 5,247,434. Both of these patents are currently undergoing reexamination before the PTO, and claims in both of these patents have been rejected during such reexamination by the PTO.

**ANSWER:**   Baxter admits that the '730 patent was filed on June 13, 2003 as Application No. 10/461,237 which claimed priority to United States Patent Nos. 5,744,027 and 5,247,434. Baxter further admits that the '434 and '027 patents are undergoing reexamination. Baxter admits that certain claims have been rejected during reexamination thus far, but denies that any of those rejections are proper. Baxter further denies each and every remaining allegation in Paragraph 182 of Counterclaims.

183.   The '237 application was terminally disclaimed over another patent asserted in the previous Hemodialysis Case – United States Patent No. 5,326,476 ("the '476 patent"). In the previous Hemodialysis Case Baxter abandoned its assertion that Fresenius' 2008K hemodialysis machine infringed any claim of the '476 patent. Baxter's claim for infringement of the '476 patent was dismissed with prejudice.

**ANSWER:**   Baxter admits that the '237 application was terminally disclaimed over the '476 patent. Baxter denies the remaining allegations in Paragraph 183 of the Counterclaims, including Fresenius' characterization of Baxter's infringement position in the previous Hemodialysis Case.

184.   In the mid-1980s, Fresenius introduced a computer-enabled device to provide additional control over their successful line of A2008 hemodialysis machines – the CMS 08. The CMS 08 was designed to work with the Fresenius A2008 line of hemodialysis machines, such as the A2008D, and provided enhanced control over ultrafiltration rates and the composition of dialysate. Upon information and belief, Baxter (and its predecessor in interest to the patents-in-suit, Althin) was aware of the CMS 08 and its capabilities.

**ANSWER:**   Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 184 of the Counterclaims and thus denies the same.

185.   The CMS 08 allowed a user to program a time-variable ultrafiltration profile – a dialysis procedure well known in the years before the earliest filing date of the patents-in-suit. For instance, Dr. Ben Lipps (now CEO for Fresenius Medical Care) introduced a device in the early 1980s that allowed time-variable ultrafiltration and sodium profiling for an early computer-controlled hemodialysis machine, the Seratron.

10

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 185 of the Counterclaims and thus denies the same.

186.    In addition to permitting the programming of a time-varying ultrafiltration profile, the CMS 08 could automatically "shift" a programmed profile along the ultrafiltration rate axis in order to set the profiled volume equal to a target volume entered by the user.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 186 of the Counterclaims and thus denies the same.

187.    During the prosecution of the '237 application, Baxter decided to cancel all the then-pending claims and presented new claims.  Newly-presented independent claim 58 was generally directed to a hemodialysis machine including, among other things, a "video screen" and "individually-selectable digits zero through nine," and which was configured to allow independent entry of a "cumulative ultrafiltration value" and "total time." The entry of those standard hemodialysis treatment parameters was to be made "via selection from the digits."  [Ex. A, Baxter Response to Office Action, 14 February 2005.]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 187 of the Counterclaims appear in Baxter's February 14, 2005 Response to Office Action.  Baxter further admits that during the prosecution of the '237 Application, it cancelled pending claims and presented new claims.  Baxter denies each and every remaining allegation in Paragraph 187 including Fresenius' characterization of the February 14, 2005 Response to Office Action.

188.    In an attempt to convince the PTO to allow the new claims, Baxter misled the PTO by arguing that the CMS 08 did not teach the claimed elements: "CMS 08 for example shows START, STOP, UP and DOWN keys for adjustment of time and value (CMS 08, e.g., at pgs. 39 to 40).  The operator needs to use those keys to increment towards a desired total amount. CMS 08 does not disclose, teach, or suggest independent digital entry of a total time amount for a parameter ... via individually selectable digits zero through nine."  [Ex. A, Baxter Response to Office Action, 14 February 2005.]

**ANSWER:**    Baxter denies that it misled the PTO.  Baxter admits that Paragraph 188 of the Counterclaims contains certain quotations from Baxter's Response to Office Action, dated February 14, 2005. Baxter denies each and every remaining allegation in paragraph 188, including Fresenius' summary of the February 14, 2005 Response to Office Action.

189.     Attached to Baxter's February 10, 2005 response is a copy of what Baxter described to the PTO as "the CMS 08 Handbook." However, Baxter's description was misleading. The version of the CMS 08 Handbook that Baxter provided to the PTO was not a true and complete copy of the CMS 08 Handbook. In particular, it does not depict a keypad with digits zero through nine. Page 24 of this version of the Handbook is reproduced to the right: **[Graphic omitted]**

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08 Handbook. Baxter further admits that it attached a copy of the CMS 08 Handbook to its February 10, 2005 Response to Office Action. Baxter denies each and every remaining allegation in Paragraph 189 of the Counterclaims.

190.     The following image is a close-up of what is described as Figure 2.3 in Baxter's version of "the CMS 08 Handbook," page 24: **[Graphic omitted]**

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08 Handbook. Baxter denies the allegation in Paragraph 190 that there was "Baxter's version of 'the CMS 08 Handbook'".

191.     Contrary to Baxter's misleading description, the CMS 08 device did, in fact, provide a numeric keyboard on the front of the device. This keyboard was located just to the right of the "up/down/stop/start" buttons, as shown in this image excerpted from a prior-art CMS 08 brochure: **[Graphic omitted]**

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08 Brochure. Baxter denies that its Response to Office Action, dated February 14, 2005, contained a misleading description. Baxter lacks sufficient information to determine the truthfulness of the remaining allegations in Paragraph 191 of the Counterclaims and thus denies the same.

192.     Baxter never brought the above image to the Examiner's attention. Upon information and belief, Baxter was aware that the actual device included a numeric keypad as shown in the image above.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 192 of the Counterclaims.

193.     Despite the fact that Baxter submitted a version of the CMS 08 Handbook that did not completely depict the actual device, the PTO remained unpersuaded that the pending claims

were patentable. The PTO rejected many of the pending claims as anticipated by the CMS 08 and the remainder as obvious over the CMS 08 Handbook in view of the Lichtenstein '983 and Rubalcaba references. [Ex. A, Office Action, 20 May 2005.]

**ANSWER:**    Baxter admits that PTO's May 20, 2005 Office Action rejected some of the pending claims of the '730 Patent.  Baxter denies each and every remaining allegation in Paragraph 193 of the Counterclaims, including Fresenius' summary of the May 20, 2005 Office Action.

194.    In response, Baxter falsely argued that the CMS 08 only teaches entry in such a manner that "a change in time [also causes] a change in the total fluid removal value." [Ex. A, Baxter Response to Office Action, 21 November 2005.]  Focusing on "Function 3" of the CMS 08, Baxter argued that creating a profile as taught by the CMS 08 Handbook "necessarily removes or adds, respectively, a volume of fluid associated with the removed or added time segment.... The result of Function 3, if performed after Function 7, is to change the shape of the profile, that is, to make it one or more segments longer or shorter." [Id.]  Baxter concluded that the operation of Function 3 means that "entry of total time and total fluid value is ... not independent.... [T]ime cannot be changed without also necessarily changing volume." [Id.]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 194 of the Counterclaims appear in Baxter's November 21, 2005 Response to Office Action.  Baxter denies that it made any false arguments to the PTO.  Baxter further denies each and every remaining allegation in Paragraph 194, including Fresenius' summary of Baxter's November 21, 2005 Response to Office Action.

195.    Among the teachings of the CMS 08 Handbook that Baxter did not point-out to the PTO is that the CMS 08 Handbook recites the change of the ultrafiltrate ("UF") goal volume independent of the treatment time, by using "Function 7 – Change Ultrafiltrate Volume."  As described by the CMS 08 Handbook, "this function serves to fit a given UF profile to another UF volume.  The form of the UF profile is retained, the size of each profile step indicating the relative change in the ultra-filtration volume."  [Ex. E, CMS 08 Handbook, F277634.] The CMS 08 accomplishes this change in volume without any corresponding change in total time. In other words, Function 7 allows the entry of volume independent of time, regardless of the order in which Function 3 and Function 7 are performed.  In fact, one need not perform Function 3 and 7 in any particular order – or at all – in treating a patient.

13

**ANSWER:** Baxter admits that certain quotations in Paragraph 195 appear in the CMS 08 Handbook. Baxter denies each and every remaining allegation in Paragraph 195, including Fresenius' summary of the CMS 08 Handbook.

196. In the same November, 2005 response discussed above, Baxter again argued, in an attempt to convince the PTO to allow the claims, that the CMS 08 did not teach digital entry of ultrafiltrate removal value and total time – incorrectly stating that the CMS 08 relies on "4 function keys" and that reference to the use of a "keyboard" on page 15 of the CMS 08 manual was ambiguous. [Ex. A, Baxter Response to Office Action, 21 November 2005.]

**ANSWER:** Baxter admits that certain quotations in Paragraph 196 of the Counterclaims appear in Baxter's November 21, 2005 Response to Office Action. Baxter denies each and every remaining allegation in Paragraph 196, including Fresenius' summary of Baxter's November 21, 2005 Response to Office Action.

197. The PTO again rejected the pending claims as anticipated by the CMS 08, noting that CMS 08 manual teaches the entry of ultrafiltrate values, total time and profiles via a keyboard, citing to page 15 and the table of contents of the CMS 08 Handbook. [Ex. A, Office Action, 22 December 2005.] Regarding the presence and use of a keyboard, page 15 of the Handbook version cited by the Examiner states only that "[t]he course of the treatment parameters over time (= profiles) can be programmed using the keyboard." [Ex. A, Baxter-submitted version of CMS 08 Handbook, page 15.]

**ANSWER:** Baxter admits that the PTO's December 22, 2005 Office Action rejected pending claims of the '237 Application. Baxter denies that any rejection are proper. Baxter further admits that certain quotations appearing in Paragraph 197 of the Counterclaims appear in the CMS 08 Handbook. Baxter denies each and every remaining allegation in Paragraph 197, including Fresenius' summaries of the December 22, 2005 Office Action and the quotations in the CMS 08 Handbook.

198. In January of 2006, Baxter conducted an interview with the Examiner assigned to the '237 application, and was apparently successful in misleading the Examiner into questioning whether the CMS 08 teaches the use of a keyboard. As recounted in the interview summary, "[i]t was agreed that the 'entered independently' and/or 'entered separately' language in claims 58 and 67 would be further clarified to further prosecution towards resolution." [Ex. A, PTO Interview Summary, 17 January 2006.]

**ANSWER:**    Baxter admits that it had an interview with the Examiner assigned to the '237 application in January 2006.  Baxter further admits that certain quotations in Paragraph 198 of the Counterclaims appear in the January 17, 2006 Interview Summary.  Baxter denies each and every remaining allegation in Paragraph 198, including Fresenius' summary of the January 17, 2006 Interview Summary.

199.    In its subsequent amendment, Baxter again misleadingly argued, in a further attempt to convince the PTO to allow the claims, that the CMS 08 Handbook cited to the Examiner was ambiguous as to the teaching of digital or keypad entry of ultrafiltration removal value and total time.  [Ex. A, Baxter Response to Office Action, 24 March 2006.]

**ANSWER:**    Baxter admits that it made certain arguments regarding the teachings of the CMS 08 Handbook in its March 24, 2006 Response to Office Action.  Baxter denies each and every remaining allegation in Paragraph 199 of the Counterclaims, including Fresenius' summary of the March 24, 2006 Response to Office Action.

200.    Once again, the Examiner disagreed, rejecting the pending claims over the disclosure of the CMS 08 Handbook that Baxter had attached to its February 2005 response. [Ex. A, Office Action, 3 April 2006.]  And, once again, Baxter elected to conduct its prosecution of the case orally rather than in writing, interviewing with the Examiner in June 2006.  The brief summary of this interview states that "[i]t was agreed that amending of independent claims 58 and 67 to recite the entry of plural ultrafiltration values as steps over time, after entry of UF goal and UF time, would distinguish these claims over the applied prior art of record.

**ANSWER:**    Baxter admits that the Examiner's April 2006 Office Action rejected pending claims of the '237 application.  Baxter denies that any rejections are proper.  Baxter further admits that it interviewed with the Examiner in June 2006.  Baxter denies each and every remaining allegation in Paragraph 200, including Fresenius' summary of the Examiner's April 2006 Office Action.  Additionally, because Fresenius has failed to identify the document in which it alleges certain quotations appear, Baxter lacks sufficient information to determine the truthfulness of the remaining allegations in Paragraph 200 of the Counterclaims and thus denies the same.

201.    After another round of rejection, minor amendment and interview, Baxter's persistence finally succeeded in gaining allowance of the pending claims, in June 2007. Claim 1 as issued requires that the hemodialysis machine interface include, among other elements, "individually selectable digits zero through nine," which feature was actually included in the CMS 08 device, but which Baxter had repeatedly deceived the PTO into thinking was not disclosed by that device.

**ANSWER:**    Baxter admits that the Examiner allowed the pending claims of the '237 application to issue in June 2007.  Baxter further admits that Claim 1 includes certain quotations appearing in Paragraph 201 of the Counterclaims.  Baxter denies that it "repeatedly deceived" the PTO.  Baxter further denies each and every remaining allegation in Paragraph 201, including Fresenius' characterization of what was disclosed by the  CMS 08 device and what the Examiner considered before allowing the '237 application to issue.

202.    Upon information and belief, in an effort to deceive and mislead the PTO into believing that the CMS 08 Handbook did not "disclose, teach or suggest independent digital entry of [hemodialysis parameters] via individually selectable digits zero through nine," Baxter attached to its February, 2005 Response to the PTO a version of the CMS 08 Handbook that did not fully and accurately depict the actual device.

**ANSWER:** Baxter denies each and every allegation in Paragraph 202 of the Counterclaims, including Fresenius' characterization of the CMS 08 Handbook attached to the Baxter February 2005 Response.

203.    Upon information and belief, Baxter had several versions of the CMS 08 Handbook in its possession at the time of the February 10, 2005 response. In fact, Baxter had possession of a German version of the CMS 08 Handbook no later than January 2001, as evidenced by its citation during an opposition proceeding before the European Patent Office regarding a foreign counterpart to Baxter's patents-in-suit. Furthermore, Baxter also had in its possession an English-language version of the CMS 08 Handbook – complete with figures – which Fresenius had produced to Baxter in the previous Hemodialysis Case no later than February 2, 2005, more than a week before Baxter's February response, and more than two years before the '730 patent issued.  The version of the CMS 08 Handbook produced by Fresenius in early February 2005 includes a figure that fully and accurately depicts the front panel of the CMS 08 machine – including the CMS 08's numeric keypad. [*See* Ex. E, CMS 08 Handbook, F277619.]

**ANSWER:**    Baxter admits that in the Hemodialysis Case Fresenius produced multiple copies of what it claimed was the CMS 08 Manual.  Baxter further states that Fresenius never

actually provided any witness to corroborate that any of those multiple versions of the CMS 08

Manual constituted prior art within the meaning of 35 U.S.C. § 102(b) and that the CMS 08

Manuals Fresenius produced were incomplete and vague translations of a German document.

Baxter lacks sufficient information to determine the truthfulness of the remaining allegations in

Paragraph 203 of the Counterclaims and thus denies the same.

204.    Upon information and belief, Baxter submitted multiple incomplete versions of the CMS 08 Handbook to the PTO, including submission on July 25, 2003 of a German version along with an English translation which did not include the figures. From the prosecution history it appears that Baxter submitted another copy of this German version of the CMS 08 Handbook on February 9, 2004, again with an English translation that did not include the figures.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 204 of the

Counterclaims.

205.    Buried amongst the nearly 22,000 pages of references mailed to the PTO, Baxter submitted, in April of 2005 and again in October 2005, portions of the English version of the CMS 08 Handbook as published by Fresenius. However, neither of these versions of the CMS 08 Handbook were specifically cited to the Examiner, nor were they ever attached to any response to an Office Action. Moreover, Baxter never specifically advised the PTO that there were additional versions of the CMS 08 Handbook that directly undercut the arguments and false representations that Baxter had made to the PTO.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 205 of the

Counterclaims.

206.    Upon information and belief, Baxter elected to present the Examiner with a version of the CMS 08 Manual that did not indicate that the CMS 08 itself had a numeric keypad as a prominent feature of the user interface despite having received a copy of the full English Handbook, complete with figures, as originally-published by Fresenius, in an attempt to deceive and mislead the PTO into granting the '730 patent.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 206 of the

Counterclaims.

207.    Upon information and belief, Baxter had in its possession a copy of the CMS 08 Handbook depicting the following figure at the time of its misleading February 10, 2005 response. This image is taken from the version of the CMS 08 Handbook produced by Fresenius on February 2, 2005, during the previous Hemodialysis Case, at page F277619. [**Graphic omitted**]

**ANSWER:**     Baxter admits that the image is a reproduction from a purported CMS 08 Handbook.  Baxter denies that its February 10, 2005 response to the Examiner was misleading.

Baxter denies the remaining allegations in Paragraph 207 of the Counterclaims.

208.     The disclosure and detail provided by the version of the CMS 08 Handbook referenced in the above paragraph stands in stark contrast to the less detailed disclosure of the version of the CMS 08 Handbook Baxter chose to attach to its response to the PTO.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 208 of the Counterclaims.

209.     Upon information and belief, Baxter intentionally chose to present the Examiner with the figure depicted in paragraph 27 rather than the figure depicted in paragraph 44 in an effort to mislead the Examiner into believing that the CMS 08 "does not disclose, teach, or suggest independent digital entry of [hemodialysis parameters] via individually selectable digits zero through nine."

**ANSWER:**     Baxter denies each and every allegation in Paragraph 209 of the Counterclaims.

210.     Upon information and belief, the Examiner would have found the figure of paragraph 44 to be highly material to the patentability of the pending claims of the '237 application.  Upon information and belief, and as a direct result of Baxter's deceitful and misleading conduct, the Examiner allowed the '237 application claims to issue over the disclosed CMS 08 Handbook.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 210 of the Counterclaims.

211.     Upon information and belief, the Examiner would not have allowed such claims if Baxter had complied with its duty of disclosure and presented the PTO with the full disclosure regarding the CMS 08, which included not only the figure reproduced in paragraph 44, but also a reference to the related modeling software, HDComp. ("POS 5: Numerical keyboard. This allows the input of numerical values (HDCOMP !)" [Ex. E, CMS 08 Handbook, F277619].)

**ANSWER:**     Baxter denies each and every allegation in Paragraph 211 of the Counterclaims.

212.    Upon information and belief, Baxter was fully aware of the HDComp software program that was intended to work with the CMS 08 device. Baxter had in its possession a copy of the HDComp Handbook during the pendency of the '237 application.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 212 of the Counterclaims and thus denies the same.

213.    In fact, Fresenius produced to Baxter, in the previous Hemodialysis Case, a copy of the HDComp Handbook no later than November 10, 2005.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 213 of the Counterclaim and thus denies the same.

214.    The HDComp Handbook clearly teaches the digital entry of numeric values defining a hemodialysis treatment including "ultrafiltrate volume" and "treatment time." [Ex. G, HDComp Handbook, F334876.]    The HDComp program, in fact, was capable of creating ultrafiltration profiles based on data that was entered using the numeric keypad of the CMS 08 or the keyboard of a stand-alone CBM computer.    [Ex. G, HDComp Handbook, *e.g.*, pages F334864, F334865, F334876.]    The HDComp Handbook was produced to Baxter nearly two years before the '730 patent issued.

**ANSWER:**    Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 214 of the Counterclaims and thus denies the same.

215.    Upon information and belief, Baxter withheld the highly material HDComp Handbook from the Examiner with the intent to gain allowance of the claims of the '237 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 215 of the Counterclaims.

216.    Upon information and belief, Baxter withheld the above-described material information with the intent to deceive the PTO during the prosecution of the '237 application into granting the application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 216 of the Counterclaims.

217.    Upon information and belief, the above-described material which Baxter withheld from the PTO was inconsistent with the positions Baxter took in opposing the PTO's claim of unpatentability.

**ANSWER:** Baxter denies each and every allegation in Paragraph 217 of the Counterclaims.

218. Upon information and belief, Baxter knew that the information it concealed from the PTO was more material to the patentability of the pending claims than any other reference of record, and Baxter concealed such information with the intent to deceive or mislead the PTO into granting the '730 patent as indicated by Baxter's deliberate selection, from among the abundant, complete descriptions of the CMS 08 prior art machine and the HDComp prior art program that it had acquired through the prior Hemodialysis Case or earlier, of a description that misrepresented the CMS 08 as not having a numerical keypad on the control panel in order to lend support to an argument by Baxter that was clearly contradicted by the CMS 08 machine itself and by other descriptions either in the record or in Baxter's possession.

**ANSWER:** Baxter denies each and every allegation in Paragraph 218 of the Counterclaims.

219. Upon information and belief, Baxter's conduct was intentional.

**ANSWER:** Baxter denies each and every allegation in Paragraph 219 of the Counterclaims.

220. Upon information and belief, the PTO relied on Baxter's misrepresentations in deciding to allow the '730 patent to issue.

**ANSWER:** Baxter denies each and every allegation in Paragraph 220 of the Counterclaims.

## Count 10
(Declaration of Unenforceability Due to Fraud on the Patent Office
During the Prosecution of the '680 Patent)

221. The '680 patent is unenforceable due to inequitable conduct in its prosecution before the U.S. Patent and Trademark Office ("the PTO"), as more particularly alleged below.

**ANSWER:** Baxter denies each and every allegation in Paragraph 221 of the Counterclaims.

222. The Application which led to the issuance of the '680 patent was filed on June 13, 2003 as Application No. 10/461,272 ("the '272 application"). The '272 application claimed priority to April 19, 1991 through a series of patents and applications that includes two of the patents at issue in the previous Hemodialysis Case – United States Patent No. 5,744,027 and United States Patent No. 5,247,434. Both of these patents are currently undergoing

20

reexamination before the PTO, and claims in both of these patents have been rejected during such reexamination by the PTO.

**ANSWER:**     Baxter admits that the Application which led to the issuance of the '680 patent was filed on June 13, 2003 as Application No. 10/461,272 ("the '272 application"). Baxter further admits that the '272 application claimed priority to April 19, 1991 through a series of patents and applications that includes two of the patents at issue in the previous Hemodialysis Case – United States Patent No. 5,744,027 and United States Patent No. 5,247,434.   Baxter admits that the PTO is currently reexamining these two patents from the previous Hemodialysis Case.  Baxter admits that certain claims have been rejected during reexamination, but denies that such rejections are proper.   Baxter further denies each an every remaining allegation in Paragraph 222 of the Counterclaims.

223.   The '272 application was terminally disclaimed over a patent asserted in this Case—the '730 patent (which, in turn, was terminally disclaimed over the '476 patent asserted in the previous Hemodialysis Case).

**ANSWER:**     Baxter admits the allegations in Paragraph 223 of the Counterclaims.

224.   Fresenius realleges paragraphs 21–23 and incorporates by reference the allegations in the paragraphs 21-23 of its Counterclaims.

21.   The '237 application was terminally disclaimed over another patent asserted in the previous  Hemodialysis Case—United States Patent No. 5,326,476 ("the '476 patent").   In the previous Hemodialysis Case Baxter abandoned its assertion that Fresenius' 2008K hemodialysis machined infringed any claim of the '476 patent. Baxter's claim for infringement of the '476 patent was dismissed with prejudice.

**ANSWER:**     Baxter admits that the '237 application was terminally disclaimed over the '476 patent. Baxter admits that its claim for infringement of the '476 patent was dismissed with prejudice.  Baxter denies the remaining allegations in Paragraph 21 of the Fresenius' Affirmative Defenses, including Fresenius' characterization of Baxter's infringement position in the previous Hemodialysis Case.

22.    In the mid-1980s, Fresenius introduced a computer-enabled device to provide additional control over their successful line of A2008 hemodialysis machines—the CMS 08.  The CMS 08 was designed to work with the Fresenius A2008 line of hemodialysis machines, such as the A2008D, and provided enhanced control over ultrafiltration rates and the composition of dialysate.  Upon information and belief, Baxter (and its predecessor in interest to the patents-in-suit, Althin) was aware of the CMS 08 and its capabilities.

**ANSWER:**  Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 22 of Fresenius' Affirmative Defenses and thus denies the same.

23.    The CMS 08 allowed a user to program a time-variable ultrafiltration profile—a dialysis procedure well known in the years before the earliest filing date of the patents-in-suit.  For instance, Dr. Ben Lipps (now CEO for Fresenius Medical Care) introduced a device in the early 1980s that allowed time-variable ultrafiltration and sodium profiling for an early computer-controlled hemodialysis machine, the Seratron.

**ANSWER:**  Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 23 of Fresenius' Affirmative Defenses and thus denies the same.

225.    The claims as originally-filed in the '272 application were directed to the use of a data card with a dialysis machine.  [Ex. B, Claims as filed, 13 June 2003.] All originally-filed claims were rejected.  [Ex. B, Office Action, 17 August 2004.]

**ANSWER:**    Baxter admits that the PTO August 17, 2004 Office Action rejected the '272 Application's original claims.  Baxter denies that any rejection was proper and further denies each and every remaining allegation in Paragraph 225 of the Counterclaims, including Fresenius' characterization of the original '272 Application.

226.    Following a pattern that Baxter has established in the cases emanating from their original 1991 application, Baxter chose to interview the Examiner prior to filing a substantive reply.  At this interview, the Baxter agreed to cancel all pending claims and that new claims "would be entered directed to a video screen and processor configured to enable independent entry of total time and cumulative ultrafiltration value and selectively entry of profile or automatically calculated rate."  [Ex. B, Interview Summary, 19 January 2005.]

**ANSWER:**    Baxter denies that it has established a pattern of interviewing with the Examiner prior to filing a substantive reply.  Baxter admits that certain quotations in Paragraph 226 of the Counterclaims appear in the January 19, 2005 Interview Summary.  Baxter denies

each and every remaining allegation in Paragraph 226, including Fresenius' characterization of the Interview Summary.

227.    Baxter then filed an amendment presenting 19 new claims directed to a hemodialysis apparatus and methods for calculation of a constant ultrafiltration rate and/or entry of ultrafiltration rate profiles.  In an attempt to convince the PTO to allow the newly-presented claims, Baxter specifically argued that the CMS 08 "does not disclose or suggest the provision of an additional calculated rate and an ability to enable selection between use of the calculated rate and an ultrafiltration profile."  [Ex. B, Baxter Response to Office Action, 14 February 2005.]  In a further attempt to mislead the PTO, Baxter also attached to their amendment a version of the CMS 08 Handbook that was ***not*** a true and complete copy of the Handbook published by Fresenius; in particular, it did not include any of the figures.

**ANSWER:**    Baxter admits that it filed an amendment presenting 19 new claims for the '272 Application.  Baxter further admits that certain quotations in Paragraph 227 appear in Baxter's February 14, 2005 Response to Office Action.  Baxter denies that it attempted to mislead the PTO.  Baxter denies each and every remaining allegation in Paragraph 227 of the Counterclaims, including Fresenius' characterization of the February 14, 2005 Office Action and Baxter's amendment to the '272 Application.

228.    In an attempt to conceal highly material prior art, Baxter did not attach a copy of the HDComp User Handbook to its February 2005 submission.  Moreover, Baxter ***never*** submitted a complete copy of the HDComp User Handbook to the PTO during the prosecution of this application.  Upon information and belief, Baxter was fully aware of the HDComp software program and Baxter had in its possession a copy of the HDComp Handbook during the pendency of the '272 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 228 of the Counterclaims.

229.    In a subsequent office action, the Examiner rejected the majority of the claims as anticipated by the CMS 08 Handbook, noting that the calculation of ultrafiltration rates was disclosed.  [Ex. B, Office Action, 21 December 2005 (citing the heading "Invoke Model Calculation").]

**ANSWER:**    Baxter admits that the Examiner's December 21, 2005 Office Action rejected claims in the '272 application.  Baxter denies that any rejection was proper and further

denies each and every remaining allegation in Paragraph 229 of the Counterclaims, including

Fresenius' summary of the December 21, 2005 Office Action.

230.    Baxter disparaged the Examiner's citation of the "model calculations" as not even mentioning ultrafiltration:  "They provide no information about what is calculated."  [Ex. B, Baxter Response to Office Action, 14 April 2006.]  Baxter ignored the reference to the HDComp User Handbook on the very same page to which the Examiner cited.  Instead, Baxter merely described the disclosure of the CMS 08 Handbook as "vague at best."  [Id.]  By concealing the teaching of the HDComp Handbook from the PTO, Baxter was able to continue its false and misleading argument that there was not even any suggestion of the specific features of the claims.  [Id. ("Applicants should not be denied patent protection based on speculation in the absence of an actual teaching.").]

**ANSWER:**    Baxter  admits  that  certain  quotations  in  Paragraph  230  of  the

Counterclaims appear in Baxter's April 14, 2006 Response to Office Action.  Baxter denies each

and every remaining allegation in Paragraph 230, including Fresenius' summary of the April 14,

2006 Response to Office Action.

231.    Baxter also misleadingly argued that the automatic calculation of a constant ultrafiltration rate was a patentable distinction over the prior art.  But the HDComp software provided the user the opportunity to select a constant ultrafiltration rate, in which case the ultrafiltration rate was computed from the entered ultrafiltration volume and treatment time.  The CMS 08 would then conduct the therapy according to this calculated constant ultrafiltration rate, unless the user elected to revise the input to select ultrafiltration profiling.

**ANSWER:**    Baxter denies that it made any misleading arguments to the PTO.  Baxter

lacks sufficient information to determine the truthfulness of the remaining allegations in

Paragraph 231 of the Counterclaims and thus denies the same.

232.    Nowhere among the nearly 20,000 pages submitted to the PTO is there a complete copy of the HDComp User Handbook.  Despite Baxter's misleading disparagement of the CMS 08 Handbook's disclosure regarding the modeling calculations and the CMS 08 Handbook's reference to the HDComp User Handbook, Baxter purposefully concealed the teaching of the HDComp Handbook.  Baxter did not fully comply with its duty of disclosure, as evidenced by the fact that it never pointed the Examiner's attention to the specific disclosure in the HDComp User Handbook that directly refuted the misleading arguments presented to the PTO.

**ANSWER:**    Baxter  denies  each  and  every  allegation  in  Paragraph  232  of  the

Counterclaims.

233.     The Examiner allowed the claims to issue without ever addressing the full disclosure that is found in the cross-referenced combination of the CMS 08 Handbook and the HDComp Handbook.

**ANSWER:**     Because Fresenius has not identified the document it is relying on for this allegation, thus Baxter lacks sufficient information to determine the truthfulness of the statements in Paragraph 233 of the Counterclaims and thus denies the same.

234.     Certain claims of the '680 patent also recite the digital entry of numeric values defining the parameters of a hemodialysis treatment.  As set forth above with respect to the '730 patent, this aspect is taught by the HDComp Handbook.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 234 of the Counterclaims, including Fresenius' characterizations of the '680 Patent and the teachings of the HD Comp Handbook.

235.     In fact, the CMS 08 Handbook itself is suggestive of the entry of numeric parameters using "selectable digits" — the very front of the device provides a numeric keypad. [Ex. F, CMS 08 Brochure, F310408; Ex. E, CMS 08 Handbook, F277619 (see figure).]  And as it did during the '730 prosecution, Baxter misleadingly and intentionally directed the Examiner's attention to a version of the CMS 08 Handbook that did not include the figures as originally-published.  [**See** discussion re Count 9, *supra.*]

**ANSWER:**     Baxter denies each and every allegation of Paragraph 235 of the Counterclaims.

236.     Upon information and belief, in an attempt to convince the PTO to allow the claims, and in an effort to mislead the PTO into believing that the CMS 08 "does not disclose or suggest the provision of an additional calculated rate and an ability to enable selection between use of the calculated rate and an ultrafiltration profile," Baxter purposefully withheld from the Examiner the HDComp User Handbook cited in the CMS 08 Handbook.

**ANSWER:**     Baxter denies each and every allegation of Paragraph 236 of the Counterclaims.

237.     Upon information and belief, Baxter was aware of the HDComp software program that was intended to work with the CMS 08 device, and had in its possession a copy of the HDComp User Handbook, during the pendency of the '272 application.

**ANSWER:** Baxter denies each and every allegation of Paragraph 237 of the Counterclaims.

238. Upon information and belief, Baxter had a copy of the HDComp User Handbook in its possession no later than November 2005. Upon information and belief, Baxter had possession of a version of the HDComp User Handbook as early as 2001.

**ANSWER:** Baxter lacks sufficient information to determine the truthfulness of the allegations in Paragraph 238 of the Counterclaims and thus denies the same.

239. In the previous Hemodialysis Case, Fresenius produced a full and complete copy of the HDComp User Handbook no later than November 10, 2005, more than five months before Baxter disparaged the disclosure of the CMS 08 Handbook as "vague at best," and more than two years before the '680 patent issued.

**ANSWER:** Baxter denies that it "disparaged the disclosure of the CMS 08 Handbook." Baxter lacks sufficient information to determine the truthfulness of the remaining allegations in Paragraph 239 of the Counterclaims and thus denies the same.

240. Upon information and belief, amongst the nearly 22,000 pages of references submitted to the PTO, in an attempt to conceal the complete teaching of the HDComp Handbook, Baxter submitted only 2 pages of the HDComp User Handbook. Baxter never specifically cited these two pages to the Examiner, nor were they ever attached to any response to an Office Action. Neither of the two pages submitted to the PTO discussed the calculation of ultrafiltration rates. Baxter never called the Examiner's attention to the specific teaching of the HDComp Handbook that rebutted the false and misleading arguments that Baxter made to the PTO regarding (i) the automatic calculation of a constant ultrafiltration rate and (ii) the entry of ultrafiltration parameters via a numeric keypad.

**ANSWER:** Baxter denies each and every allegation in Paragraph 240 of the Counterclaims.

241. Upon information and belief, Baxter intentionally concealed from the Examiner a complete copy of the HDComp User Handbook.

**ANSWER:** Baxter denies each and every allegation in Paragraph 241 of the Counterclaims.

242. Upon information and belief, Baxter intentionally withheld from the Examiner a complete copy of the HDComp User Handbook in an effort to mislead the Examiner into believing that the CMS 08 "does not disclose or suggest the provision of an additional calculated

rate and an ability to enable selection between use of the calculated rate and an ultrafiltration profile."

**ANSWER:**    Baxter denies each and every allegation in Paragraph 242 of the Counterclaims.

243.    Upon information and belief, the Examiner would have found the disclosure of the HDComp User Handbook to be highly material to the patentability of the pending claims of the '272 application. Upon information and belief, and as a result of Baxter's intentional conduct, including concealing the HDComp Handbook, the Examiner allowed the '272 application claims to issue.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 243 of the Counterclaims.

244.    Upon information and belief, the Examiner would not have allowed the claims of the '272 application to issue if the PTO had been presented with the full disclosure of the HDComp User Handbook, which taught that the CMS 08's ultrafiltration rate could be "calculated from UF volume and treatment time." [Ex. G, HDComp Handbook, F334877.]

**ANSWER:**    Baxter denies each and every allegation in Paragraph 244 of the Counterclaims.

245.    Upon information and belief, Baxter withheld the highly material HDComp User Handbook from the Examiner with the intent to gain allowance of the claims of the '272 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 245 of the Counterclaims.

246.    Upon information and belief, Baxter withheld the above-described material information with the intent to deceive the PTO during the prosecution of the '272 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 246 of the Counterclaims.

247.    Upon information and belief, the above-described material which Baxter withheld from the PTO was inconsistent with the positions Baxter took in opposing the PTO's claim of unpatentability.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 247 of the Counterclaims.

248.    Upon information and belief, Baxter knew or should have known that the information it concealed from the PTO was more material to the patentability of the pending claims than any other reference of record, and Baxter withheld such information with the intent to deceive or mislead the PTO into granting the '680 patent as indicated by its deliberate selection of misleading evidence that mischaracterized the operation of the CMS 08 when Baxter had in its possession a complete and accurate description of the CMS 08 that showed the very feature Baxter argued to the Examiner was absent from the CMS 08 and as further evidenced by Baxter's choice to conceal the relevant teachings of the HDComp Handbook from the PTO.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 248 of the Counterclaims.

249.    Upon information and belief, Baxter's conduct was intentional.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 249 of the Counterclaims.

250.    Upon information and belief, the PTO relied on Baxter's misrepresentations in deciding to allow the '680 patent.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 250 of the Counterclaims.

### <u>Count 11</u>
(Declaration of Unenforceability Due to Fraud on the Patent Office
During the Prosecution of the '892 Patent)

251.    The '892 patent is unenforceable due to inequitable conduct in its prosecution before the U.S. Patent and Trademark Office ("the PTO"), as more particularly alleged below.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 251 of the Counterclaims.

252.    The claims as originally-filed in application number 11/175,072 (which led to the issuance of the '892 patent) were filed in this continuation application after having been rejected by the Board of Patent Appeals and Interferences decision on the '892 patent's parent application, 09/711,240. Baxter claimed, in a Preliminary Amendment to the '072 application, that they intended to submit new evidence in support of supposed secondary considerations of non-obviousness in order to address the reasoning of the Board affirming the rejection of the

pending claims, but Baxter never presented such evidence. Baxter's preliminary amendment, and the complete lack of any of the promised new evidence of non-obviousness, triggered a first-officeaction final rejection. [Ex. C, Office Action, 20 September 2005.]

**ANSWER:** Baxter admits that the claims as originally-filed in application number 11/175,072 (which led to the issuance of the '892 patent) were filed in this continuation application after having been rejected by the Board of Patent Appeals and Interferences decision on the '892 patent's parent application 09/711,240. Baxter denies that any rejection by the Board was proper. Baxter further admits that it submitted a Preliminary Amendment to the '072 Application. Baxter denies each and every remaining allegation in Paragraph 252 of the Counterclaims, including Fresenius' Summary of the Preliminary Amendment and the PTO's September 20, 2005 Office Action.

253. Following the pattern that Baxter has established in all of the cases emanating from their original 1991 application, Baxter chose to interview the Examiner prior to filing a substantive reply. In this interview, Baxter apparently agreed to submit new evidence regarding the ordinary skill in the art and secondary considerations. [Ex. C, Interview Summary, 19 January 2006.] But in Baxter's next filing, instead of submitting such argument, they sought suspension of the prosecution of the '072 application in light of the reexamination request related to the '434 patent.

**ANSWER:** Baxter admits that it interviewed with the Examiner before filing a reply to the September 20, 2005 Office Action. Baxter denies Fresenius' summary of the January 19, 2006 Interview Summary. Because Fresenius has failed to identify any documents other than the January 19, 2006 Interview Summary, Baxter cannot determine the truthfulness of the remaining allegations in Paragraph 253 of the Counterclaims and thus denies the same.

254. When prosecution of this application was re-commenced, the Examiner issued a rejection over a combination of Lichtenstein in view of Rubalcaba and/or Kerns, but this time, also in further view of the Sarns Manual — the first time the Sarns Manual had been addressed in the fifteen-and-one-half year pendency of the various parent applications preceding this rejection. [Ex. C, Office Action, 12 October 2006.]

**ANSWER:** Baxter admits that the PTO's October 12, 2006 Office Action rejected claims of the '072 application. Baxter denies that any rejections are proper and further rejects

each and every remaining allegation in Paragraph 254 of the Counterclaims, including Fresenius'

summary of the October 12, 2006 Office Action.

255.    In response to this rejection, Baxter amended the claims to recite that the touch screen be "adapted to display a time-variable profile of the parameter ... the touch screen being further adapted to track progress of the parameter during treatment by coloring past and future time intervals within the plot of the time-variable profile differently." [Ex. C, Baxter Response to Office Action, 7 March 2007.] Baxter specifically argued that this amendment was not taught by the prior art applied in the Examiner's rejection. [Id.]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 255 of the

Counterclaims appear in Baxter's March 7, 2007 Response to Office Action.  Baxter denies the

remaining allegations of Paragraph 255, including Fresenius' summary of the March 7, 2007

Response to Office Action.

256.    Another interview was held, at which the Examiner apparently agreed that the recent amendment substantially distinguished over the prior art of record, but that the language needed to "more closely correspond" to the specification. [Ex. C, Office Action, 24 April 2007.]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 256 of the

Counterclaims appear in the PTO's April 24, 2007 Office Action.  Because Fresenius has failed

to identify when the alleged interview occurred, Baxter cannot determine the truthfulness of the

remaining allegations in Paragraph 256 of the Counterclaims and thus denies the same.

257.    In the subsequent office action, the Examiner rejected the claims as obvious over the same combination of prior art over which the claims had been previously rejected, this time in view of two new references: Tivig, which was described as teaching the use of color with "a user interface for medical, surgical or intensive care applications generally, hence inclusive of dialysis or infusion that incorporates a touch screen input ... in which the display is multicolored to enhance and/or distinguish display of profiles of past, present and future time-dependent variables;" and Coutre, which was described as teaching "an infusion management and pumping system, in which data entered and displayed is highlighted in a different color when such data has been entered (becomes a past occurrence)." [Id.] The Examiner concluded that it would have been obvious "to adapt the touch screen to distinguish past and future time intervals, or enable to track progress [*sic*], by coloring past and future time intervals differently, as suggested by Tivig and/or Coutre." [Id.]

**ANSWER:**    Baxter admits that the Examiner rejected claims of the '072 application,

but denies that any rejections were proper.  Baxter further admits that certain quotations in

Paragraph 257 of the Counterclaims appear in the April 24, 2007 Office Action.  Baxter denies

the remaining allegations of Paragraph 257, including Fresenius' summary of those quotations.

258.    Baxter amended the claims to replace the phrase "track progress" with the phrase "distinguish past from future time intervals." [Ex. C, Baxter Response to Office Action, 7 September 2007.] Addressing the obviousness rejection, Baxter argued that "Tivig appears merely to say that different waves, trends, alphanumerics can have different colors, presumably to help distinguish the display of multiple trends and waves.... There is no hint or suggestion in Tivig to distinguish past and future time intervals of any parameter, graphical or alphanumeric." [Id.]  Baxter addressed Coutre similarly, "Coutre merely indicates to a user that certain data has been entered. Coutre is not concerned with distinguishing past and future time intervals of an ongoing, operational parameter, e.g., amount of ultrafiltration removed.... Coutre provides no hint or suggestion of how to distinguish past and future time intervals within any type of plot, let alone a plot of a time-variable profile." [Id.]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 258 of the

Counterclaims appear in the its September 7, 2007 Response to Office Action.  Baxter denies the

remaining allegations of Paragraph 258, including Fresenius' summary of those quotations.

259.    Baxter, failing to meet its duty of disclosure, never brought to the attention of the Examiner that the CMS 08 Handbook discloses the very feature identified as missing from the above prior art.

**ANSWER:**    Baxter denies each and every allegation of Paragraph 259 of the

Counterclaims.

260.    The CMS 08 Handbook teaches "how to distinguish past and future time intervals within ... a plot of a time-variable profile" and is directly concerned with "an ongoing, operational parameter" of a hemodialysis machine (including ultrafiltration).

**ANSWER:**    Baxter admits that certain quotations in Paragraph 260 of the

Counterclaims appear in the CMS 08 Handbook.  Baxter denies each and every remaining

allegation in Paragraph 260, including Fresenius' summary of those quotations.

261.    The Examiner allowed the claims to issue without specifically citing the CMS 08 Handbook.

**ANSWER:**    Baxter denies each and every allegation of Paragraph 261 of the

Counterclaims.

31

262.    The CMS 08 Handbook and Brochure teach the display of a time-variable profile of an operational parameter as a graph on a time-based abscissa and value-based ordinate. [Ex. E, CMS 08 Handbook, F277625-F277627; Ex. F, CMS 08 Brochure, F310408, F3104110.] The CMS 08 Handbook teaches the display of profiled ultrafiltration rates and sodium concentrations [Ex. E, CMS 08 Handbook, F277627-628] as well as the display of profiled bicarbonate and potassium concentration profiles [id., F277657-658]

**ANSWER:**    Baxter admits that certain quotations in Paragraph 262 of the Counterclaims appear in the CMS 08  Handbook and CMS 08 Brochure.  Baxter denies each and every remaining allegation in Paragraph 262, including Fresenius' summary of the CMS 08 Handbook and Brochure teachings.

263.    The CMS 08 Handbook teaches distinguishing past from future time intervals. The CMS 08 Handbook and CMS 08 Brochure teach the display of a progress bar of solid color within the plot of the time variable profile. [Ex. E, CMS 08 Handbook, F277627.] This is clearly shown from the figure reproduced below and the associated legend that describes "9" as "Elapsed dialysis time: Represented as a block on the time axis." [Id., F277628.]  ].  [**Graphic omitted**]

**ANSWER:**    Baxter admits that the image is a reproduction from the CMS 08 Handbook.  Baxter admits that certain quotations in Paragraph 263 of the Counterclaims appear in the CMS 08 Handbook and CMS 08 Brochure.  Baxter denies each and every remaining allegation in Paragraph 263, including Fresenius' summary of the CMS 08 Handbook and Brochure.

264.    Another depiction of the screen is found in Part 1.1 of the CMS 08 Handbook, and further depicts how time intervals are distinguished within the plot during the progression of treatment. [*See* "9", Ex. E, CMS 08 Handbook, F277657.]

**ANSWER:**    Baxter admits that Part 1.1 of the CMS 08 Handbook depicts a display screen.   Baxter denies each and every remaining allegation in Paragraph 264 of the Counterclaims, including Fresenius' summary of the CMS 08 Handbook and Brochure.

265.    The color CMS 08 brochure depicts using color to distinguish past from future time intervals. [*See* right, green line "9" along time axis, Ex. F, CMS 08 Brochure, F310410.] [**Graphic omitted**]

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08 Brochure.

Baxter denies each and every remaining allegation in Paragraph 265 of the Counterclaims,

including Fresenius' characterization of what the CMS 08 brochure depicts.

266.     Upon information and belief, in an effort to mislead the Examiner into believing that the CMS 08 Handbook did not teach "how to distinguish past and future time intervals," Baxter attached to office action responses in co-pending patent applications an incomplete version of the CMS 08 Handbook that did not include any of the figures.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 266 of the

Counterclaims.

267.     Upon information and belief, in an attempt to conceal the full teaching of the CMS 08 Handbook and in an attempt to convince the PTO to allow the pending claims, Baxter never attached to any office action response in any of the asserted patents a full and complete English version of the CMS 08 Handbook that included the figures.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 267 of the

Counterclaims.

268.     Upon information and belief, in an attempt to conceal the full teaching of the CMS 08, Baxter never attached to any office action response in any of the asserted patents a copy of the CMS 08 Brochure.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 268 of the

Counterclaims.

269.     Upon information and belief, Baxter submitted over 20,000 pages of references to the PTO in the '072 application. Failing to comply with its duty of disclosure, Baxter never called the Examiner's attention to the teachings of the CMS 08 Handbook and CMS 08 Brochure that contradict the false and misleading arguments made by Baxter.

**ANSWER:**     Baxter denies that it failed to comply with its duty of disclosure.  Baxter

further denies that it made false and misleading arguments to the Examiner.  Baxter denies each

and every remaining allegation in Paragraph 269 of the Counterclaims.

270.     The same Examiner who reviewed the '072 application recently stated in a pending Baxter patent application filed as a continuation of the '240 application (App. No. 12/013,990), that while Baxter was requested to submit "various non-patent literature, litigation documents and affidavits" submitted in related applications, [i]t would not be desirable,

necessary or useful, however, to incorporate each and every non-patent literature and associated legal documents and affidavits of record in the various parent and ancestor applications." Upon information and belief, this evidences the Examiner's frustration with Baxter's dumping of material – including tens of thousands of pages of irrelevant pleadings from the previous Hemodialysis Case – on the PTO.

**ANSWER:**     Because Fresenius failed to identify the document referenced in Paragraph

270 of the Counterclaims, Baxter cannot determine the truthfulness of the allegations in

Paragraph 270 and thus denies same.

271.     Upon information and belief, the Examiner would have found the figures of the CMS 08 Handbook to be highly material to the patentability of the pending claims of the '072 application. Upon information and belief, and as a result of Baxter's intentional concealment of the CMS 08 Handbook, the Examiner allowed the '072 application to issue without citing the CMS 08 Handbook in any office action.

**ANSWER:**     Baxter denies each and every remaining allegation in Paragraph 271 of the

Counterclaims.

272.     Upon information and belief, the Examiner would have found the figures of the CMS 08 Brochure to be highly material to the patentability of the pending claims of the '072 application. Upon information and belief, and as a result of Baxter's intentional concealing of the CMS 08 Brochure, the Examiner allowed the '072 application to issue without citing the CMS 08 Brochure in any office action.

**ANSWER:**     Baxter denies each and every remaining allegation in Paragraph 272 of the

Counterclaims.

273.     Upon information and belief, Baxter was fully aware of the teaching of the full and complete versions of the CMS 08 Handbook and the CMS 08 Brochure during the pendency of the '072 application. Upon information and belief, the Examiner allowed such claims to issue only as a result of Baxter's intentional concealment of this highly relevant material prior art.

**ANSWER:**     Baxter denies each and every allegation in Paragraph 273 of the

Counterclaims.

274.     Upon information and belief, Baxter concealed the full disclosure of the CMS 08 Handbook by burying full copies of the CMS 08 Handbook only amongst the more than 20,000 pages of references, while misleadingly attaching to office action responses in co-pending applications an incomplete version of the Handbook that did not include any figures.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 274 of the Counterclaims.

275.    Upon information and belief, Baxter concealed the full disclosure of the CMS 08 Handbook with the intent to deceive the PTO during the prosecution of the '072 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 275 of the Counterclaims.

276.    Upon information and belief, Baxter similarly concealed the teachings of the CMS 08 Brochure with the intent to deceive the PTO during the prosecution of the '072 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 276 of the Counterclaims.

277.    Upon information and belief, the above-described material which Baxter concealed from the Examiner was inconsistent with the positions Baxter took in opposing the PTO's claim of unpatentability.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 277 of the Counterclaims.

278.    Upon information and belief, Baxter knew or should have known that the information it concealed from the PTO was more material to the patentability of the pending claims than any other reference of record, and Baxter concealed such information with the intent to deceive or mislead the PTO into granting the '892 patent as indicated by its deliberate selection of a misleading and incomplete version of the description of the CMS 08 for discussion in connection with its response to an office action, while knowing that the full description of the CMS 08 documented in the CMS 08 Handbook and CMS 08 Brochure contradicted its arguments.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 278 of the Counterclaims.

279.    Upon information and belief, Baxter's conduct was intentional.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 279 of the Counterclaims.

280.    Upon information and belief, the PTO relied on Baxter's concealment and misrepresentations in deciding to allow the '892 patent.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 280 of the

Counterclaims.

### Count 12
(Declaration of Unenforceability Due to Fraud on the Patent Office
During the Prosecution of the '340 Patent)

281.    The '340 patent is unenforceable due to inequitable conduct in its prosecution before the U.S. Patent and Trademark Office ("the PTO"), as more particularly alleged below.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 281 of the

Counterclaims.

282.    The '322 application (which led to the issuance of the '340 patent) was filed as a continuation application after affirmance by the Board of Patent Appeals and Interferences of the rejection of the parent application, 09/711,240.

**ANSWER:**    Baxter admits that the '322 application was filed as a continuation

application of the parent application, 09/711,240. Baxter denies that any rejections are proper

and thus denies the remaining allegations in Paragraph 282 of the Counterclaims.

283.    The Examiner rejected all of the originally-presented claims, some as anticipated, the remainder as obvious over a combination of Lichtenstein with either Rubalcaba or Kerns – the same combination of art applied by the Board of Patent Appeals and Interferences in affirming the final rejection of the parent '240 application. [Ex. D, Office Action, 27 July 2004.]

**ANSWER:**    Baxter admits that the Examiner rejected all of the originally-presented

claims in the '322 application.  Baxter denies that any rejection is proper and thus denies each

and every remaining allegation in Paragraph 283 including Fresenius' summary of the July 27,

2004 Office Action.

284.    Following a pattern that Baxter has established in all of the cases emanating from their original 1991 application, Baxter chose to interview the Examiner prior to filing a substantive reply. At the interview, it was apparently agreed that claim 37 would distinguish over the prior art "in view of the combination of elements including 'time variable profile of the operational parameter.'" [Ex. D, Interview Summary, 24 January 2005.]

36

**ANSWER:** Baxter admits that it interviewed with the Examiner before filing a rely to the July 27, 2004 Office Action. Baxter further admits that some quotations in Paragraph 284 of the Counterclaims appear in the January 24, 2005 Interview Summary. Baxter denies each and every remaining allegation in Paragraph 284, including Fresenius' summary of the January 24, 2005 Interview Summary.

285. As a result of this interview, Baxter cancelled all of the claims other than claim 37, making no other amendments. Baxter also submitted a terminal disclaimer over the '131 patent. At the Examiner's request, Baxter attached to its response a copy of what Baxter incorrectly described to the PTO as "the CMS 08 Handbook." [Ex. D, Baxter Response to Office Action, 27 January 2005.] However, upon information and belief, Baxter's description was misleading. Upon information and belief, the CMS 08 Handbook version attached to Baxter's response did not include any of the figures of the complete English CMS 08 Handbook.

**ANSWER:** Baxter admits that its January 27, 2005 Response to Office Action cancelled all claims of the '240 application other than claim 37. Baxter admits that it made no amendments to claim 37 in its January 27, 2005 Response to Office Action. Baxter further admits that it submitted a terminal disclaimer over the '131 patent. Baxter admits that it attached a copy of the CMS 08 Handbook to its January 27, 2005 Office Action. Baxter denies each and every remaining allegation in Paragraph 285 of the Counterclaims.

286. The Examiner next issued a final rejection of claim 37 as indefinite, and also issued an obviousness-type double patenting rejection over Baxter's '476 patent – one of the patents asserted in the previous Hemodialysis Case. [Ex. D, Office Action, 7 April 2005.] Soon after that rejection, Baxter submitted an Information Disclosure Statement to the PTO that included **thousands** of pages of material developed from the previous hemodialysis litigation.

**ANSWER:** Baxter admits that the Examiner's April 7, 2005 Office Action issued a final rejection of claim 37 of the '322 Application. Baxter denies that any rejections are proper and thus denies each and every remaining allegation of Paragraph 286 of the Counterclaims, including Fresenius' summary of the April 7, 2005 Office Action.

287. In response to the final rejection, Baxter amended the sole pending claim to recite the particular disposable supplies used in the performance of a hemodialysis treatment and filed a terminal disclaimer over the '476 patent. [Ex. D, Baxter Response to Office Action, 26 April

2005.] The Examiner, however, withdrew the finality of the previous rejection and, in light of the "CMOS Manual" [*sic*, believed to be a version of the CMS 08 Handbook], issued a new obviousness rejection. The Examiner recognized that the CMS 08 Handbook disclosed "adjusting and changing operational parameters that are displayed as profile on the computer monitor screen including time-variable profiles having an ordinate and abscissa for ultrafiltration rates...." [Ex. D, Office Action, 21 June 2005.]

**ANSWER:**     Baxter admits that its April 26, 2005 Response to Office Action amended claim 37 in the '322 application.  Baxter also admits that certain quotations in Paragraph 286 of the Counterclaims appear in the Examiner's June 21, 2005 Office Action.  Baxter denies each and every remaining allegation in Paragraph 287, including Fresenius' summary of the April 26, 2005 Response to Office Action and the June 21, 2005 Office Action.

288.     Baxter then sought suspension of prosecution in light of the request for reexamination of the '131 patent, which Baxter described as "having a related claim." [Ex. D, Baxter Request for Suspension, 30 January 2006.]

**ANSWER:**     Baxter admits that it sought suspension of prosecution of the '322 application.  Baxter further admits that certain quotations in Paragraph 288 of the Counterclaims appear in its January 30, 2006 Request for Suspension.  Baxter denies each and every remaining allegation in Paragraph 288, including Fresenius' summary of the January 30, 2006 Request for Suspension.

289.     After resumption of prosecution, the Examiner again rejected the sole pending claim as obvious. In an attempt to overcome the combination of the CMS 08 Handbook and the Sams Manual, Baxter introduced the following element: "tracking progress of the operational parameter during treatment by coloring past and future time intervals within the plot of the time-variable profile differently." [Ex. D, Baxter Response to Office Action, 28 February 2007.] Baxter cited the specification for support: "Bars corresponding to past time intervals reflect treatment history and cannot be changed. To readily distinguish past from future, the bars corresponding to each are displayed in different colors." [Id.]

**ANSWER:**     Baxter admits that during the prosecution of the '322 Application, the Examiner rejected claim 37.  Baxter denies that any rejections are proper.  Baxter further admits that certain quotations in Paragraph 289 of the Counterclaims appear in its February 28, 2007

Response to Office Action.  Baxter denies each and every remaining allegation in Paragraph 289, including Fresenius' characterization of the February 28, 2007 Response to Office Action.

290.    In an effort to orally convince the Examiner to allow the pending claims, Baxter also requested another interview. The Examiner's report of that interview reflects agreement that the presented claim distinguished over the applied prior art, but that the language should more closely correspond to the specification. [Ex. D, Interview Summary, 11 April 2007.]

**ANSWER:**    Baxter admits that it requested an interview with the Examiner.  Baxter denies each and every remaining allegation in Paragraph 290 of the Counterclaims, including Fresenius' summary of the April 11, 2007 Interview Summary.

291.    Despite that interview, the Examiner issued another final rejection, rejecting the claims as obvious over the same combination of prior art (CMS 08 in combination with Sams in view of Lichtenstein and Kerns) and adding two new references to the rejection: Tivig, which was described as teaching "a user interface for medical, surgical or intensive care applications generally, hence inclusive of dialysis or infusion that incorporates a touch screen input ... in which the display is multi-colored to enhance and/or distinguish display of profiles of past, present and future time-dependent variables;" and Coutre, which was described as teaching "an infusion management and pumping system, in which data entered and displayed is highlighted in a different color when such data has been entered (becomes a past occurrence)." [Ex. D, Office Action, 24 April 2007.] The Examiner concluded that it would have been obvious "to adapt the touch screen to distinguish past and future time intervals, or enable to track progress [*sic*], by coloring past and future time intervals differently, as suggested by Tivig and/or Coutre." [Id.]

**ANSWER:**    Baxter admits that the Examiner's April 24, 2007 Office Action issued a final rejection of the '322 application.  Baxter denies that any rejection was proper. Baxter further admits that certain quotations in Paragraph 291 appear in the April 24, 2007 Office Action.   Baxter denies each and every remaining allegation in Paragraph 291, including Fresenius' summary of the April 24, 2007 Office Action.

292.    Baxter amended the claims to replace the phrase "track progress" with the phrase "distinguish past from future time intervals." [Ex. D, Baxter Response to Office Action, 7 September 2007.] Addressing the obviousness rejection, Baxter argued that "Tivig appears merely to say that different waves, trends, alphanumerics can have different colors, presumably to help distinguish the display of multiple trends and waves.... There is no hint or suggestion in Tivig to distinguish past and future time intervals of any parameter, graphical or alphanumeric." [Id.] Baxter addressed Coutre similarly, "Coutre merely indicates to a user that certain data has been entered. Coutre is not concerned with distinguishing past and future time intervals of an ongoing, operational parameter, e.g., amount of ultrafiltration removed.... Coutre provides no

hint or suggestion of how to distinguish past and future time intervals within any type of plot, let alone a plot of a time-variable profile." [Id.]

**ANSWER:**    Baxter admits that it amended the claims of the '322 application to replace the phrase "track progress" with the phrase "distinguish past from future time intervals." Baxter further admits that certain quotations in Paragraph 292 of the Counterclaims appear in Baxter's September 7, 2007 Response to Office Action.    Baxter denies each and every remaining allegation in Paragraph 292, including Fresenius' summary of the September 7, 2007 Response to Office Action.

293.    On the basis of this argument and one more interview, the Examiner finally relented and allowed the claims. [Ex. D, Interview Summary, 10 September 2007 ("It was agreed that amending claim 37 by substitution of 'distinguishing past from future time intervals' for 'tracking progress' would both clarify the claim and more clearly distinguish over all of the prior art of record including the Tivig and Coutre patents.").]

**ANSWER:**    Baxter admits the Examiner allowed the claims of the '322 application to issue. Baxter further admits that certain quotations in Paragraph 293 of the Counterclaims appear in the September 10. 2007 Interview Summary.    Baxter denies each and every remaining allegation in Paragraph 293.

294.    Contrary to the misleading arguments posed by Baxter, and in contrast to the incomplete teaching of the version of the CMS 08 Handbook to which Baxter attempted to draw the Examiner's attention, the CMS 08 Handbook in fact offers far more than a mere "hint or suggestion" regarding distinguishing past from future. The full and complete version of the CMS 08 Handbook explicitly teaches "how to distinguish past and future time intervals within ... a plot of a time-variable profile" and is directly concerned with "an ongoing, operational parameter" of a hemodialysis machine (including ultrafiltration).

**ANSWER:**    Baxter admits that certain quotations in Paragraph 294 of the Counterclaims appear in the CMS 08 Handbook.    Baxter denies that it presented any misleading arguments to the Examiner.    Baxter further denies each and every remaining allegation in Paragraph 294, including Fresenius' summary of the CMS 08 Handbook's teachings.

295.    The CMS 08 Handbook and CMS 08 Brochure teach the display of a progress bar of solid color within the plot of the time variable profile. This is clearly shown from the figure

reproduced below and the associated legend that describes "9" as "Elapsed dialysis time: Represented as a block on the time axis." [Ex. E, CMS 08 Handbook, F277628.] [**Graphic omitted**]

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08

Handbook.  Baxter admits that certain quotations in Paragraph 295 appear in the CMS 08

Handbook.  Baxter denies each and every remaining allegation in Paragraph 295, including

Fresenius' summary of the CMS 08 Handbook and Brochure's teachings.

296.    Another depiction of the screen is found in Part 1.1 of the CMS 08 Handbook, and further depicts how time intervals are distinguished within the plot during the progression of treatment. [*See* "9", Ex. E, CMS 08 Handbook, F277657.]

**ANSWER:**     Baxter admits that Part 1.1 of the CMS 08 Handbook depicts a display

screen.   Baxter denies each and every remaining allegation in Paragraph 296 of the

Counterclaims, including Fresenius' summary of what the CMS 08 Handbook depicts.

297.    The color CMS 08 brochure depicts using color to distinguish past from future time intervals. [*See* right, green line "9" along time axis, Ex. F, CMS 08 Brochure, F310410.] [**Graphic omitted**]

**ANSWER:**     Baxter admits that the image is a reproduction from the CMS 08 Brochure.

Baxter denies each and every remaining allegation of Paragraph 297 of the Counterclaims,

including Fresenius' summary of what the color CMS 08 Brochure depicts.

298.    Upon information and belief, in an effort to conceal the complete teaching of the CMS 08 Handbook, Baxter attached to its January 2005 office action response a version of the CMS 08 Handbook that did not include any of the figures.

**ANSWER:**     Baxter admits that it attached the CMS 08 Handbook to its January 2005

Office Action.  Baxter denies each and every remaining allegation in Paragraph 298 of the

Counterclaims.

299.    Upon information and belief, an in an effort to mislead the Examiner into believing that the CMS 08 Handbook did not teach "how to distinguish past and future time intervals," and failing in its duty to disclose, Baxter never brought to the Examiner's attention a full version of the CMS 08 Handbook that included the figures reproduced above.

41

**ANSWER:** Baxter denies each and every allegation in Paragraph 299 of the Counterclaims.

300.    Upon information and belief, Baxter never attached to any office action response in any of the asserted patents a full version of the CMS 08 Brochure that included the figures.

**ANSWER:** Baxter denies each and every allegation in Paragraph 300 of the Counterclaims.

301.    Upon information and belief, in an attempt to conceal the full teaching of the CMS 08, Baxter never attached to any office action response in any of the asserted patents a copy of the CMS 08 Brochure.

**ANSWER:** Baxter denies each and every allegation in Paragraph 301 of the Counterclaims.

302.    Upon information and belief, Baxter submitted over 20,000 pages of references to the PTO in this application. Failing to comply with its duty of disclosure, Baxter never called the Examiner's attention to the teachings of the CMS 08 Handbook and CMS 08 Brochure that contradict the false and misleading arguments posed by Baxter.

**ANSWER:** Baxter denies each and every allegation in Paragraph 302 of the Counterclaims.

303.    The same Examiner who reviewed the '322 application recently stated in a pending Baxter patent application filed as a continuation of the '240 application (App. No. 12/013,990), that while Baxter was requested to submit "various non-patent literature, litigation documents and affidavits," submitted in related applications, "[i]t would not be desirable, necessary or useful, however, to incorporate each and every non-patent literature and associated legal documents and affidavits of record in the various parent and ancestor applications." Upon information and belief, this evidences the Examiner's frustration with Baxter's dumping of material – including tens of thousands of pages of irrelevant pleadings from the previous Hemodialysis Case – on the PTO.

**ANSWER:** Because Fresenius failed to identify the document containing the alleged Examiner's statement, Baxter lacks sufficient information to determine the truthfulness of the quotation in Paragraph 303 of the Counterclaims and thus denies the same. Baxter further denies each and every remaining allegation in Paragraph 303.

304.    Upon information and belief, the Examiner would have found the figures of the CMS 08 Handbook and CMS 08 Brochure to be highly material to the patentability of the pending claims of the '322 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 304 of the Counterclaims.

305.    Upon information and belief, the Examiner would not have allowed such claims if presented with the full disclosure regarding the CMS 08, which includes the figures from both the CMS 08 Handbook and CMS 08 Brochure. Upon information and belief, the Examiner allowed such claims to issue only as a result of Baxter's intentional concealment of this highly relevant material prior art.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 305 of the Counterclaims.

306.    Upon information and belief, Baxter concealed the full disclosure of the CMS 08 Handbook by submitting full and complete versions of the CMS 08 Handbook only amongst the more than 20,000 pages of references, while misleadingly attaching to an office action response a copy of the Handbook that did not include any figures.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 306 of the Counterclaims.

307.    Upon information and belief, Baxter hid the disclosure of the CMS 08 Handbook with the intent to deceive the PTO during the prosecution of the '322 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 307 of the Counterclaims.

308.    Upon information and belief, Baxter similarly concealed the teachings of the CMS 08 Brochure with the intent to deceive the PTO during the prosecution of the '072 application.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 308 of the Counterclaims.

309.    Upon information and belief, the above-described material which Baxter concealed from the Examiner was inconsistent with the positions Baxter took in opposing the PTO's claim of unpatentability.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 309 of the Counterclaims.

310.    Upon information and belief, Baxter knew or should have known that the information it concealed from the PTO was more material to the patentability of the pending claims than any other reference of record, and Baxter withheld such information with the intent to deceive or mislead the PTO into granting the '340 patent by selectively highlighting for discussion a misleading and inaccurate description of the CMS 08 which it knew was contradicted by the complete description it had in its possession, and by failing to bring to the Examiner's attention the full descriptions of the CMS 08 that contradicted its arguments.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 310 of the Counterclaims.

311.    Upon information and belief, Baxter's conduct was intentional.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 311 of the Counterclaims.

312.    Upon information and belief, the PTO relied on Baxter's concealment and misrepresentations in deciding to allow the '340 patent.

**ANSWER:**    Baxter denies each and every allegation in Paragraph 312 of the Counterclaims.

## Count 13
(Declaration of Unenforceability Due to Pattern of Fraud on the Patent Office)

313.    The patents-in-suit are so closely related to each other, particularly with regard to the manner in which they were prosecuted and the manner in which Baxter mislead the PTO, as set forth above, that any inequitable conduct committed in connection with any one of the patents-in-suit taints each of the other patents-in-suit rendering all patents-in-suit unenforceable.

**ANSWER**:    Baxter denies each and every allegation in Paragraph 313 of the Counterclaims.

## PRAYER FOR RELIEF

**ANSWER:**    Baxter denies that Fresenius is entitled to the relief requested or any other

relief.

Dated: August 13, 2008                    Respectfully submitted,


                                          By: __s/Michael J. Abernathy_____
                                              Michael J. Abernathy
                                              mabernathy@bellboyd.com
                                              Sanjay K. Murthy
                                              smurthy@bellboyd.com
                                              Brian J. Arnold
                                              barnold@bellboyd.com
                                              Marron A. Mahoney
                                              mmahoney@bellboyd.com
                                              BELL, BOYD & LLOYD LLP
                                              70 West Madison Street, Suite 3100
                                              Chicago, Illinois  60602
                                              Telephone: (312) 372-1121
                                              Facsimile: (312) 827-8000

                                              ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 16, 2008 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Fed. R. Civ. P. 5(b)(3). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Dated: August 13, 2008

Respectfully submitted,

By: */s Sanjay K. Murthy*