IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC. and BAXTER HEALTHCARE CORPORATION, | ) Civil Action No. 08-CV-2389 ) ) Hon. Blanche M. Manning |
| Plaintiffs, v. | ) ) ) Hon. Martin C. Ashman ) |
| FRESENIUS MEDICAL CARE HOLDINGS, INC. and FRESENIUS USA, INC., | ) Jury Trial Demanded ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW
IN SUPPORT OF FRESENIUS' MOTION TO STAY**

Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. ("Fresenius") respectfully submit this memorandum of law in support of their Motion to Stay.

**INTRODUCTION**

Baxter International, Inc. and Baxter Healthcare Corporation ("Baxter") have brought this patent infringement suit against Fresenius, asserting that Fresenius' "2008K" hemodialysis machine – a machine designed to perform kidney functions when a person's kidneys are failing – infringes four patents, U.S. Patent Nos. 7,264,730, 7,303,680, 7,318,892, and 7,351,340 (the "Patents in Suit") (*see* Dkt. No. 1, Compl., Ex. D – G).

Fresenius has initiated *inter partes* reexamination proceedings in the U.S. Patent and Trademark Office ("PTO") to declare invalid all four of the Patents in Suit. Statistically speaking, there is at least an 88% chance that the PTO will determine that some or all of the claims in Baxter's patents are invalid. (*See below.*) Motions to stay pending reexamination are granted routinely, especially in circumstances such as this, where the request is filed early in the case – all the more so where the reexamination is *inter partes* rather than *ex parte*, as discussed

below. The principal reasons cited for granting a stay include deference to the expertise of the PTO, which can determine the validity of patents far more efficiently and at far lower cost than district court proceedings, as well as avoiding the enormous waste of district court (and the parties') resources when a patent that is being litigated is suddenly cancelled or amended in concurrent reexamination proceedings. Given the high likelihood that the reexamination proceedings will affect the merits here, this case should be stayed.

On top of the reexamination proceedings, there are other proceedings that likely will affect this case. First, as admitted by Baxter, the Patents in Suit are all related to three other hemodialysis patents asserted by Baxter against Fresenius in a prior patent infringement case tried to a jury in Oakland, California (the "Oakland HD Case").[1] That case is now on appeal to the United States Court of Appeals for the Federal Circuit. Here, Baxter contends that the Patents in Suit use some of the very same claim terms as the patents at issue in Oakland and on appeal. (*See* Dkt. No. 1, Compl., ¶8.) The Federal Circuit's ruling in that appeal may well affect the merits here. The Federal Circuit is expected to rule on the proper construction of common claim terms and on the scope and content of the applicable prior art. A stay in this case will permit this Court and the parties to have the benefit of the Federal Circuit's decision.

In addition, three Baxter patents that were asserted in the Oakland HD Case are also subject to pending reexamination proceedings in the PTO. Those patents have not fared well in reexamination. The PTO has rejected every single patent claim asserted by Baxter against Fresenius in the Oakland HD Case. The decisions as to two of the three patents are final, and Baxter is trying to appeal those decisions. The rejection of the claims of the third patent is not

---

[1] There are two patent cases between the parties that either have been or are being litigated in California. One, *Fresenius USA, Inc. v. Baxter Int'l Inc.,* No. C 03-1431 (N.D. Cal.), was tried in Oakland and involved hemodialysis technology. That is the "Oakland HD Case" on appeal. Another case, *Baxter Int'l Inc. v. Fresenius Med. Care Holdings Inc.,* No. C 07-1359 (N.D. Cal.), involves patents related to peritoneal dialysis, and is pending in the district court in San Francisco.

yet final. Because the three patents from the Oakland HD Case are related to the Patents in Suit, those reexamination proceedings may be relevant to determining the proper scope of the patent claims here. Moreover, the PTO decisions rejecting the claims of those three Baxter patents suggest that the Patents in Suit will also be rejected in their own reexamination proceedings.

Accordingly, because the merits here will likely be affected by the reexamination proceedings as to the Patents in Suit, the appeal of the Oakland HD Case, and the reexamination of the Oakland HD Patents, this case should be stayed.

## BACKGROUND

**The Parties**

Fresenius makes and sells a variety of medical products, including machines designed to be used in kidney dialysis. These products include hemodialysis and peritoneal dialysis devices.[2] The parties agree that the technology involved in this case involves hemodialysis, not peritoneal dialysis. (*See* Dkt. No. 41, Baxter's Answer to Fresenius' Countercl., ¶¶161, 168.)

Baxter sells many types of medical products, and, up until 2005, Baxter and Fresenius competed against one another in selling hemodialysis machines. However, in 2005 Baxter received a "Class I" recall letter from the FDA regarding its hemodialysis machines.[3] At that point, assumedly, Baxter decided to stop manufacturing hemodialysis machines rather than correct the problems with its machines. (*See* Ex. A; *see also* Dkt. No. 41, ¶161.)[4] Thus, at this

---

[2] "Hemodialysis" refers to the extracorporeal treatment of a patient's blood by passing it through a dialyzer (or artificial kidney), allowing removal of excess water and metabolic waste products from the blood. "Peritoneal dialysis" is somewhat different and refers to a treatment where a sterile solution is instilled into a patient's abdominal cavity and allowed to remain for a period of time. Waste products and excess water diffuse into the dialysate and the spent dialysate is then drained from the patient.

[3] A Class I recall is the FDA's most serious level, and is reserved for situations where "there is a reasonable probability [of] serious adverse health consequences or death." 21 C.F.R. § 7.3(m)(1).

[4] All exhibits to this Memorandum are referenced as "(Ex. _.)" and a courtesy copy has been provided to the Court. Also, pursuant to the local rules, Defendants have provided courtesy copies of any unpublished opinion cited herein.

3

time, Fresenius is the only major manufacturer of conventional hemodialysis machines in the United States.

**The Oakland Hemodialysis Patent Litigation**

In the Oakland HD Case, initiated in 2003, Baxter asserted that Fresenius' "2008K" hemodialysis machine infringed several Baxter patents, including U.S. Patent Nos. 5,247,434, 5,744,027 and 6,284,131 (the "Oakland HD Patents") (*see* Exs. B-D). The three Oakland HD Patents are closely related to those at issue here. All seven patents (three in Oakland, four here) issued from a common ancestor patent, U.S. Patent No. 5,247,434 (the "Ancestor '434 patent," Ex. B). Indeed, Baxter's Complaint here expressly asserts that the Patents in Suit are similar to those in the Oakland HD Case. (*See* Dkt. No. 1, Compl. ¶8 (comparing claim 5 of the asserted '892 patent and claim 1 of the '131 patent); *see also* Compl. ¶¶12-13.)

The Oakland HD Case was tried to a jury. Fresenius won the trial, with the jury finding all of the Oakland HD Patents invalid. The trial court reversed the jury's verdict, ordering judgment for Baxter as a matter of law. A second trial was held to determine damages. Baxter sought nearly $150 million. The jury awarded $14.2 million. Then, the district court enjoined further sales of Fresenius' 2008K machine, but due to concerns about the public interest, postponed the effective date of the injunction until January 1, 2009.

On April 9, 2008, Fresenius appealed to the Federal Circuit. The appeal is now fully briefed and pending argument.

**The Initiation of this Litigation**

In April 2008, less than three weeks after Fresenius' appeal of the Oakland HD Case, Baxter filed this lawsuit, apparently as a hedge against losing the appeal. This suit asserts four patents that are closely related to the Oakland HD Patents. Here, Baxter accuses the very same

4

Fresenius 2008K hemodialysis machine that was accused of infringement in the Oakland HD Case. Baxter could have obtained the Patents in Suit earlier and asserted them in the Oakland HD Case, but chose not to. Several of Fresenius' affirmative defenses here are based, at least in part, on the substantial overlap in the patents in this case with those in the Oakland HD Case, and Baxter's failure to assert these patents earlier. (*See*, *e.g.*, Dkt. No. 35, Fresenius' Am. Answer, ¶9 (res judicata), ¶10 (waiver), ¶11 (laches), and ¶13 (patent exhaustion)).

**Reexamination of the Patents in Suit**

In July, Fresenius filed formal requests that the PTO institute *inter partes* reexaminations of all four Patents in Suit here. (*See* Exs. E-H.) Reexamination is an administrative procedure that allows anyone to ask the PTO to "reexamine" an issued U.S. patent to determine whether it is valid. *See* 35 U.S.C. §§ 302-305. In its requests, Fresenius asked the PTO to review certain prior art that was not considered when the PTO initially issued the Patents in Suit. The PTO must decide whether to grant Fresenius' reexamination requests within three months, 35 U.S.C. § 303, in this case, by this October.[5] PTO statistics suggest that there is a 99% chance that the PTO will grant Fresenius' requests. (Ex. J.)[6] If the PTO grants the reexamination requests, both Fresenius and Baxter will participate in the administrative proceedings addressing the validity of the patents.[7] Published statistics for *inter partes* reexaminations suggest that there is at least an

---

[5] At the August 17th Status Conference, the Court asked whether the PTO actually abides by the statutory three month limit. Analysis of the ten most recently granted *inter partes* reexamination requests indicates that the average time between the filing date of the request and the date when the reexamination was ordered by the PTO is 53 days. (*See* Ex. I.) *See also Arrivalstar S.S. v. Canadian Nat. Ry. Co.*, No. 08-C-1086, 2008 WL 2940807, *1 (N.D. Ill. Jul. 25, 2008) (Dow, J.) (noting that "the PTO ruled well in advance of its statutory deadline" in granting defendant's request for *inter partes* reexamination).

[6] For example, in 2007 the PTO granted 118 out of 119 *inter partes* reexamination requests. (Ex. J.)

[7] There are two types of reexamination. In "*ex parte* reexamination," a third-party requestor cannot participate. In "*inter partes* reexamination" third party requestors, such as Fresenius, have the opportunity to participate and respond in the reexamination proceedings. *Compare* 35 U.S.C. § 314 (*inter partes* reexamination) *with* 35 U.S.C. § 305 (*ex parte* reexamination). The trade-off for being allowed to participate in the reexamination proceeding is that the requestor is then estopped from raising certain

5

89% chance that the PTO will find some or all of the claims of Baxter's Patents in Suit to be invalid, and may require Baxter to amend those claims. (*See*, *e.g.*, Ex. K.)

**Reexamination of the Oakland HD Patents**

Baxter's Complaint here asserts that the Patents in Suit and the Oakland HD Patents are nearly identical. For example, paragraph 8 of the Complaint includes a "claim chart" to emphasize the similarity between claim 1 of the '131 patent from the Oakland HD Case and claim 5 of the '892 patent, a Patent in Suit. (*See* Dkt. No. 1, Compl. ¶8.) However, what Baxter does not say in its Complaint is that the PTO has now determined that many of Baxter's claims in the Oakland HD Patents are invalid. In fact, in November 2007, months before Baxter's Complaint was filed, the PTO issued a *final rejection* of claim 1 of the '131 patent from the Oakland HD Case – the very claim discussed in detail in paragraph 8 of Baxter's Complaint.

The rejection of claim 1 of the '131 patent is not isolated. Indeed, *all* of the Oakland HD Patents are undergoing reexamination. So far, all the claims that Baxter asserted against Fresenius in the Oakland HD Case have been rejected as invalid by the PTO. For example, the PTO has rejected claims 7 and 10 of the '027 patent as anticipated and has rejected claim 11 as obvious; rejecting every claim for which Fresenius sought reexamination. (Ex. L.) The reexaminations of the ancestor '434 patent and the '131 patent are further along, and have resulted in *final rejections* of all claims asserted against Fresenius. (Exs. M & N.)

## ARGUMENT

Courts routinely grant stays when co-pending proceedings may impact the scope of the suit before it. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself,

---

invalidity defenses in subsequent litigation. 35 U.S.C. § 315(c). This tends to streamline (or even may eliminate the need for) any litigation that takes place following the conclusion of the reexamination.

for counsel, and for litigants." *Aetna State Bank v. Altheimer*, 430 F.2d 750, 755 (7th Cir. 1970), citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *similarly*, *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005). "District courts have broad discretion to control their dockets using techniques such as stays of proceedings, provided a stay is not indefinite or otherwise excessive." *Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, No. 00-C-4632, 2008 WL 1848142, at *5 (N.D. Ill., Apr. 23, 2008) (Kocoras, J.), *citing Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).

Here there are three co-pending proceedings that will most likely affect the merits of this case: (a) the reexamination of the Patents in Suit; (b) the appeal of the Oakland HD Case; and (c) the reexamination of the Oakland HD Patents. Accordingly, this case should be stayed.

###### A. The Reexamination of the Patents in Suit Warrants a Stay

A party may challenge in the PTO the validity of an issued patent through a "reexamination." 35 U.S.C. § 302. This requires the PTO to "start over" its examination of a patent. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). This gives the PTO an opportunity to fix any defects in the agency's initial examination that led to the grant of a patent. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir. 1985). The PTO may cancel, confirm, and amend any patent claim. 35 U.S.C. § 307. A reexamination often provides the benefits of settling validity disputes more quickly than protracted litigation, allows courts to refer patent validity questions to the expertise of the PTO, and reinforces "investor confidence" by affording the PTO a broader opportunity to review "doubtful patents." *Patlex,* at 602.

When patents are in reexamination, there "is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination proceedings." *Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 WL 3104794, at *3 (E.D. Mich. Oct. 22,

7

2007), *citing ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994).

That is because "shifting the validity issue to the PTO has many advantages," including:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination [may] encourage a settlement without the further use of the Court.
>
> 5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85-C-7565, 1987 WL 6314, at *1-2 (N.D. Ill. Feb. 2, 1987) (Kocoras, J.). Indeed, the reexamination procedure was intended "to provide an inexpensive, expedient means of determining patent validity, which, if available and practical, should be deferred to by the courts." *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007).

A stay pending reexamination is usually most favored when, as here, it is brought early in a case. *See, e.g., Arrivalstar*, 2008 WL 2940807, at *2 (noting that "courts frequently issue stays pending reexamination when the litigation is at an early stage"); *Target Therapeutics Inc. v. SciMed Life Sys. Inc.*, No. C-94-20775, 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995) (stay granted where case was in its "incipient stages"). In fact, in view of the benefits of reexamination, and the high frequency with which the PTO grants reexamination requests, stay

8

motions are frequently granted before the PTO has acted on a reexamination request. *See e.g., Grayling Indus. v. GPAC Inc.*, No. 1:89-CV-451, 1991 WL 236196, at *1 (N.D. Ga. Mar. 25, 1991) (granting stay on motion filed one week after filing of request for reexamination and before reexamination was granted); *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F.Supp.2d 418, 435 (N.D.N.Y. 2007) (granting stay prior to PTO's determination on defendant's request for reexamination). Stay motions have also been granted even before a reexamination request has been filed. *ASCII Corp.,* 844 F.Supp. at 1381 (stay granted on condition that reexamination request be filed within 30 days). However, the benefits to be gained by awaiting resolution of a PTO reexamination have also been held to justify a stay of litigation in cases that have progressed far beyond the current status of this case.[8]

Moreover, courts have recognized that the benefits of *inter partes* reexamination "can have no other effect but to streamline ongoing litigation. For these reasons, courts have an even more compelling reason to grant a stay when an *inter partes* reexamination is proceeding with the same parties." *EchoStar Tech. Corp., v. TiVo, Inc*., No. 5:05-CV-81, 2006 WL 2501494, at *3 (E.D. Tex. Jul. 14, 2006).

Courts in this District have cited reexamination statistics, commenting that these statistics "suggest a very real possibility that, if this litigation proceeds in tandem with the PTO reexamination proceedings, the parties will have wasted their resources litigating issues that ultimately may be mooted by the PTO's findings." *Arrivalstar*, 2008 WL 2940807, at *3.

---

[8] For example, stays pending reexamination have been granted (i) after the pre-trial conference, *Loffland Bros. Co. v. Mid-western Energy Corp.*, No. Civ-83-2255, 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985); (ii) after eighteen months of litigation, including significant discovery, *Emhart Indus*., 1987 WL 6314, at *4; (iii) after nearly all discovery had been completed and with the pretrial order issued, *Grayling Indus.*, 1991 WL 236196; and (iv) after a previous jury verdict was reversed by the Federal Circuit and before commencement of a new trial, *Vitronics Corp. v. Conceptronic, Inc*., 36 F. Supp.2d 440, 441-42 (D.N.H. 1997).

9

However, Fresenius' motion is based on more than statistics. This Court should grant the requested stay because Fresenius' requests for reexamination are strong on the merits, especially because they are based on art not fully considered by the PTO during original prosecution of the Patents in Suit. As set forth in Fresenius' inequitable conduct counterclaims, during prosecution of the Patents in Suit Baxter purposefully made selective disclosures to the PTO in an apparent attempt to mislead the patent examiner regarding the true teaching of the prior art.

As just one example, in response to a rejection from the PTO based on the prior art Fresenius CMS 08 device, Baxter argued to the patent examiner that the "CMS 08 does not disclose, teach, or suggest independent digital entry of a total time amount for a parameter … via individually selectable digits zero through nine." (*See* Dkt. No. 35, Fresenius' Am. Answer, Att. No. 1 at 48.) To support its argument, Baxter pointed the patent examiner to a version of the CMS 08 Handbook that did not contain any figures – notably absent was a figure depicting a numeric keypad (including "digits zero through nine") on the front of the CMS 08 device. (*See* Ex. O, *compare* page 24 of Baxter's attachment *with* page F277619 of the CMS-08 Handbook.)[9] Had Baxter admitted to the examiner that the CMS 08 device included a numeric keypad, its '730 patent would never have issued. When the PTO finally realizes in the reexamination how it was previously misled by Baxter, it will almost certainly reject the '730 patent.

"In deciding a motion to stay, the Court must weigh the competing interests: *i.e.*, the possible damage of granting a stay versus the hardship or inequity of forcing a case onward; and the Court must consider whether the stay will result in a simplification or a complication of the issues, proof and questions of law." *Clintec Nutrition Co. v. Abbott Labs*., No. 94-C-3152, 1995 WL 228988 (N.D. Ill., Apr. 14, 1995) (Ashman, J.) (granting stay pending reexamination). Here,

---

[9] Baxter may now attempt to argue that it "submitted" the full CMS 08 Handbook to the PTO, but the truth is that it buried the reference among tens of thousands of pages of less relevant material, and never corrected its misrepresentations about the reference.

10

like in the *Clintec Nutrition* case, the "competing interests" strongly support a stay. This case has only just begun: no discovery has been taken, and the Court has not yet become deeply involved in the case. This Court has not had occasion to deal with the issue of the validity of the patents in suit. In contrast, the PTO already has begun its assessment of Fresenius' reexamination requests. Even if some of Baxter's claims survive reexamination, the reexamination proceeding will narrow and focus the pertinent issues for this litigation.

Should this case proceed without a stay and before the Patents in Suit have been reexamined, the parties (and Court) may well have to revisit several discovery and claim construction issues, perhaps at great expense. Indeed, given the track record demonstrated by the asserted claims in Baxter's Oakland HD Patents – all of which have been rejected so far – there is a very high likelihood that the Patents in Suit would have to be re-litigated absent a stay. The parties should not spend money, time, and effort on discovery and motion practice here when there are such serious concerns regarding the validity of Baxter's patents.

In considering the "competing interests" involved in a motion to stay pending reexamination, the non-movant has the burden of establishing that prejudice to it outweighs the benefit of the reexamination. *See Target Therapeutics*, 1995 WL 20470, at *2 (holding that non-movant "failed to demonstrate that it will suffer undue prejudice if this action is stayed."). Baxter cannot meet that high burden here. Indeed, Baxter will not be harmed by a stay pending reexamination. Baxter's injury, if any, for infringement of the patents in suit is completely compensable by money damages. Fresenius and Baxter are no longer head-to-head competitors in the market for hemodialysis machines. In fact, Baxter admits that in 2005 it decided to discontinue the manufacture of hemodialysis machines, and instead focus its resources on peritoneal dialysis therapies and home therapies. (Dkt. No. 41, Answer to Countercl., ¶161).

11

And, in any event, Baxter already has been awarded $14.2 million in damages for infringement by Fresenius' 2008K machine of the Oakland HD Patents. To the extent that Baxter might be awarded any incremental additional damages for infringement of the patents in suit, it would be a small fraction of $14 million given the similarity of the patents in the two cases. Thus, Baxter's remedy at law will not be prejudiced by a stay.

### B. A Stay is Warranted by the Oakland HD Appeal

Parallel court proceedings also are grounds warranting a stay. "A federal court is authorized to stay proceedings in a lawsuit before it because parallel proceedings are pending in another court, either federal or state." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002); *Aetna*, 430 F.2d at 755 ("A stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery."); *see also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) (plurality opinion); *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999).

Here, the appeal in the Oakland HD Case raises a number of issues that are directly relevant to this case. *First*, each of the Patents in Suit claims priority to the ancestor '434 patent asserted in the Oakland HD Case, and also lists U.S. Patent No. 5,744,027 ("the '027 patent") as a "related patent" which forms a part of its prosecution history. The validity of both the ancestor '434 patent and the '027 patent is at issue in the pending appeal. The law clearly establishes that proceedings on a "parent" patent can be informative to, even controlling of, a claim construction in a "child" patent. *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007).

*Second*, as one of the issues it raised on appeal, Fresenius is specifically asking the Federal Circuit to construe the term "time-variable profile." (*See* Ex. P at 61-63.) The identical

12

term is used in each of the independent claims of the '340 and '892 Patents in Suit. Thus, the Federal Circuit's decision in the appeal of the Oakland HD Case is expected to be directly relevant to claim construction in this case.

*Third*, a key issue on appeal is the obviousness of the Oakland HD Patents. (*See id.* at 34-49.) In addressing this issue, the Federal Circuit will need to consider whether there was substantial evidence supporting the jury's verdict on the following: (i) the scope and content of the prior art; (ii) the level of ordinary skill in the art; (iii) the differences, if any, between the prior art and the alleged invention; and (iv) secondary considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). The technical field (or "art" in patentese) in this case is identical to the technical field in the Oakland HD Case, *i.e.*, hemodialysis. Thus, many of these very same issues, including many of the same prior art references, will need to be considered in this case. For example, whether or not certain prior art references constituted "analogous art" was hotly contested by the parties in the Oakland HD Case, and will be in this case as well if it is not stayed. However, the Federal Circuit's decision in the appeal is likely to determine that issue.

*Fourth*, the Federal Circuit's opinion will also likely establish that many of the elements claimed in the patents-in-suit were well known, standard features of prior art hemodialysis machines. (*See* Ex. P at 34-49.) Such a finding will eliminate the need to establish those facts in this case and will narrow the issues before this Court.

And *fifth*, the Federal Circuit may also address Baxter's arguments regarding secondary considerations, such as commercial success, long-felt but unmet need, praise, skepticism and failure of others, which are also expected to arise in this case.

At bottom, the issues in the pending appeal of the Oakland HD Case and this case are so close and so intertwined that a stay pending the outcome of that appeal alone would be an

13

independent ground for a stay here. It would be inefficient and unfair for this case to proceed before the appeal has been decided.

The appeal is fully briefed now and will likely soon be decided. Accordingly, by granting a stay pending the outcome of the reexaminations, this Court will also have the benefit of the Federal Circuit's decision in the pending appeal.

### C. The Reexaminations of the Oakland HD Patents Also Warrant a Stay

The pending reexaminations of the Oakland HD Patents also are another independent reason to stay this case. Those reexaminations may also affect the merits of this litigation. Indeed, because of the relationship of the Oakland HD Patents to the four Patents in Suit, those reexamination proceedings will be relevant to determining the proper scope of the claims of the patents in this case. *See*, *e.g.*, *Biovail Corp. v. Andrx Pharms., Inc*., 239 F.3d 1297, 1301 (Fed. Cir. 2001) (prosecution history of related patent is relevant to claim construction); *see also E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co*., 849 F.2d 1430, 1439 (Fed. Cir. 1988) (prosecution history in reissue/reexamination is relevant to claim construction).

The reexamination of the Oakland HD Patents is well underway. The relevant claims from those patents have all been found invalid by the PTO. Several of the PTO's decisions are final, and Baxter is trying to appeal those decisions. As those reexamination proceedings will likely be completed soon, if this case is stayed this Court and the parties here will also have the benefit of the PTO's analysis in those reexamination proceedings.

## **CONCLUSION**

For each of the independent grounds discussed above, this Court should stay all proceedings in this case pending the decisions of the PTO in the reexamination proceedings related to the Patents in Suit.

Dated:   August 22, 2008            Respectfully submitted,

                                    By:   s/ Michael E. Florey
                                          Michael E. Florey
                                          (*pro hac vice*)
                                          FISH & RICHARDSON P.C.
                                          13300 Dain Rauscher Plaza
                                          60 South Sixth Street
                                          Minneapolis, MN  55402
                                          Tel: (612) 337-5070

                                          Mark J. Hebert
                                          (*pro hac vice application pending*)
                                          FISH & RICHARDSON P.C.
                                          225 Franklin Street
                                          Boston, MA 02110
                                          (617) 542-5070

                                          Jerold S. Solovy
                                          Eric A. Sacks
                                          Andrew W. Vail
                                          JENNER & BLOCK LLP
                                          330 N. Wabash Ave.
                                          Chicago, IL 606011
                                          (312) 222-9350

                                          Attorneys for Defendants / Counterclaimants
                                          Fresenius Medical Care Holdings, Inc. and
                                          Fresenius USA, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 22, 2008 I caused a copy of the Notice of Motion, the Motion for Stay and the Memorandum in Support of Motion for Stay to be filed electronically. Notice of these filings were sent automatically, via the Court's CM/ECF system to all parties that have filed an electronic appearance in the proceeding. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Dated:  August 22, 2008         Respectfully submitted,

By:   s/ Michael E. Florey
        Michael E. Florey
        (*pro hac vice*)
        FISH & RICHARDSON P.C.
        13300 Dain Rauscher Plaza
        60 South Sixth Street
        Minneapolis, MN  55402
        Tel: (612) 337-5070

        Mark J. Hebert
        (*pro hac vice application pending*)
        FISH & RICHARDSON P.C.
        225 Franklin Street
        Boston, MA 02110
        (617) 542-5070

        Jerold S. Solovy
        Eric A. Sacks
        Andrew W. Vail
        JENNER & BLOCK LLP
        330 N. Wabash Ave.
        Chicago, IL 606011
        (312) 222-9350

        Attorneys for Defendants / Counterclaimants
        Fresenius Medical Care Holdings, Inc. and
        Fresenius USA, Inc.