IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **BAXTER INTERNATIONAL, INC.** and | ) | |
| **BAXTER HEALTHCARE CORP.**, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 2389 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| | ) | Magistrate Judge |
| **FRESENIUS MEDICAL CARE** | ) | Martin C. Ashman |
| **HOLDINGS, INC.** and **FRESENIUS** | ) | |
| **USA, INC.**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In April 2008, Plaintiffs, Baxter International, Inc. and Baxter Healthcare Corporation (collectively, "Baxter"), filed the instant lawsuit, alleging that Defendants, Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. ("Fresenius"), make and sell a hemodialysis machine that infringes four patents owned by Baxter. On August 22, 2008, Fresenius moved to stay the case pending the conclusion of proceedings that Fresenius initiated before the U.S. Patent and Trademark Office ("PTO") to reexamine the patents at issue in this case. Judge Manning referred the motion to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the reasons stated below, Fresenius's motion to stay is granted.

## I.    Background

The instant case is only the latest episode in a series of legal skirmishes between Baxter and Fresenius. Because the history of litigation between the parties is relevant to the outcome of this motion, the Court reviews that history briefly here.

### A.    The California Case

Baxter and Fresenius are companies that develop, manufacture, and market a variety of medical supplies and medical equipment. The parties agree that in 2003, Baxter and Fresenius were competing suppliers of hemodialysis machines, devices that are used to filter excess water and waste products from the blood of patients whose kidneys do not function properly. On April 4, 2003, Fresenius filed a complaint in the United States District Court for the Northern District of California seeking a declaratory judgment of invalidity and non-infringement of five patents held by Baxter. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-1431, 2007 WL 518804, at *1 (N.D. Cal. February 13, 2007). Baxter counterclaimed, asserting that Fresenius's "2008H" and "2008K" hemodialysis machines infringed four of the five patents addressed by Fresenius's complaint. *Id.*

In September 2005, the district court granted Baxter's motion for summary judgment on two of its infringement claims. *Fresenius*, 2007 WL 518804, at *1. After a jury found that Baxter's patents were invalid, Baxter prevailed on a motion for judgment as a matter of law and the jury's findings of invalidity were set aside. *Id.* at *5-13. A second trial was held to determine the amount of Baxter's damages, and Baxter was awarded slightly more than fourteen million dollars. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-1431,

- 2 -

2008 WL 928539, at *1 (N.D. Cal. April 4, 2008). In addition, the district court granted Baxter's motion for a permanent injunction and enjoined Fresenius from infringing three of the patents in suit by making or selling the 2008K hemodialysis machine. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-1431, 2008 WL 928496, at *6-7 (N.D. Cal. April 4, 2008). Because the court recognized that an uninterrupted supply of hemodialysis machines to the market was in the public interest, the injunction had an effective date of January 1, 2009, in order to allow Fresenius to redesign its product. *Id.* at *6-7. Fresenius's appeal in the California case is currently pending before the Federal Circuit, and the parties agree that a decision is likely in early 2009. (Resp. at 14, n. 9.) The Federal Circuit denied Fresenius's motion to stay the injunction pending appeal, finding that Fresenius failed to show a strong likelihood of success on the merits of the appeal or that the potential for harm from the injunction weighed strongly in its favor. (Resp., Ex. 4.)

## B.     The Patent and Trademark Office

Several relevant events occurred outside of the courtroom while the parties were litigating the California case. First, in September and October of 2005, Fresenius filed requests with the PTO for *ex parte* reexamination of three of the patents that were then being litigated. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-1341, 2007 WL 1655625, at *1 (N.D. Cal. June 7, 2007). Two of those patents were ultimately rejected (though Baxter has appealed), while one reexamination is still pending. (Defs.' Reply at 3, Exs. M, N.) Fresenius attempted to stay the damages portion of the California case based on these reexamination proceedings, but its motion was denied on June 7, 2007. *Fresenius*, 2007 WL 1655625, at *1. Next, between

- 3 -

September 2007 and April 2008, the Patent and Trademark Office issued the four patents that are the basis for the instant case, which was filed shortly after the last patent in suit issued in April 2008. (Compl., Exs. D-G.) In July 2008, Fresenius filed requests for *inter partes* reexamination of the four patents in suit with the PTO. (Defs.' Mem., Exs. E-H.) Those requests for reexamination are currently pending.

## C.    The Motion to Stay

On August 22, 2008, Fresenius filed its motion to stay this case pending the anticipated reexamination of the four patents in suit. Fresenius argues that there are actually three independent reasons that justify a stay in this case. First, Fresenius points to the reexamination of the patents that were at issue in the California case. Because the patents in the California case are related to the patents in suit here, Fresenius argues, the final outcome of the reexaminations may impact the scope of the claims in this case. Next, Fresenius argues that the pending appeal of the California case provides another basis for a stay because the Federal Circuit's rulings on the "parent" patents may be relevant or even controlling in this case involving the "children." Finally, Fresenius points to the pending requests for reexamination of the patents in suit in this case. Because it believes these requests for reexamination will be granted, Fresenius argues that staying the case at this early stage will allow the parties to avoid unnecessary litigation costs, while the PTO's reexamination process will significantly streamline the issues for trial.

- 4 -

## II.    Discussion

Baxter and Fresenius are largely in agreement with respect to the legal principles that govern this motion to stay. The Court has inherent power to manage its dockets and stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power "includ[es] the authority to order a stay pending conclusion of a PTO reexamination," *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988), as well as to stay a case pending the resolution of litigation in another forum that involves similar, potentially controlling, issues. *See Texas Indep. Producers & Royalty Owners Assoc. v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005). The Court considers each of Fresenius's asserted bases for a stay in turn.

### A.    PTO Reexamination Proceedings

The decision whether to stay a case pending PTO reexamination is entrusted to the Court's sound discretion. *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. March 3, 2004). In making its decision, the Court considers "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 C 1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008). Staying proceedings in the district court pending the resolution of a PTO reexamination may have numerous benefits for the parties and the court, including streamlining the case and simplifying the remaining issues, promoting settlement, and reducing the length and expense of litigation. *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565,

1987 WL 6314, at *2 (N.D. Ill. February 2, 1987) (enumerating benefits of staying litigation pending PTO reexamination). These benefits are maximized when the stay is sought early in the litigation, and consequently courts "frequently issue stays pending reexamination when the litigation is at an early stage." *Arrivalstar*, 2008 WL 2940807, at *2. Against the benefits of a stay, the Court must weigh the hardship a stay may impose on the non-moving party and consider whether the non-movant would be unduly prejudiced if a stay was granted. *Clintec Nutrition Co. v. Abbott Labs.*, No. 94 C 3152, 1995 WL 228988, at *1 (N.D. Ill. April 14, 1995).

## 1. Reexamination of the California Patents

As discussed above, Baxter and Fresenius litigated a case in the Northern District of California that concluded earlier this year. The patents at issue in that case were incorporated into the same 2008K hemodialysis machine as the patents in this case, and the parties appear to agree that they are "related." While the California litigation was still pending, Fresenius filed a request for *ex parte* reexamination of the patents (which the Court will call the "California patents" for convenience). The PTO granted this request and has finally rejected two claims. The third claim is still pending, while the two final rejections have been appealed. Fresenius argues that because the prosecution history of a related patent is relevant to claim construction, *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001), the Court should stay these proceedings pending the final resolution of the reexaminations of the related California patents.

In response, Baxter first argues that even if the reexaminations of the California patents are relevant, they will not directly affect the issues in this case because "each patent establishes

- 6 -

an independent and distinct property right." *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996.) Because the California patent reexaminations involve different patents and different property rights, the outcome of the reexaminations would not be *res judicata* in this case, and Baxter would still be entitled to assert that its patents are valid. However, as noted above, the benefits of a stay are not limited to the streamlining of issues through *res judicata* or issue preclusion. Even if the outcome of a reexamination does not determine the result in a district court case, it may nonetheless simplify the issues, reduce the amount of discovery that is needed, and presage the outcome of the litigation in a way that makes the parties more receptive to settlement negotiations that could dispose of the case. Therefore, the fact that the California patents are merely "related" to the patents at issue in this case does not necessarily mean that a stay is inappropriate.

Baxter also argues that a stay is inappropriate because the reexamination process is lengthy and far from completion. Although two of the claims from the California litigation have been finally rejected, reexamination of one claim is still pending. Furthermore, it appears that Baxter intends to exercise its right to appeal any adverse reexamination outcomes. As one court has noted, "[r]eality and past experience dictate that several years might very well pass from the time when a final office action is issued . . . to when the claims are finally and officially 'confirmed' after appeals." *NTP, Inc., v. Research in Motion, Inc.*, 397 F. Supp. 2d 785, 788 (E.D. Va. 2005).

The Court finds that the uncertain benefits of a stay pending reexamination of the California patents, which are merely "related" to the patents in suit here, combined with the potential for a two- or three-year delay in the resolution of the reexamination proceedings,

renders a stay inappropriate. This is particularly so because the patents in suit may expire before the conclusion of the reexamination proceedings, depriving Baxter of the opportunity for injunctive relief. While the impending expiration of a patent is not necessarily grounds for denying a stay, *see Tap*, 2004 WL 422697, at *1, the prospect that Baxter's claim for injunctive relief may be rendered moot is an additional cost that weighs against the uncertain benefits of a stay. Therefore, the Court finds that a stay based on the PTO's reexamination of the California patents would be inappropriate because the costs and prejudicial effects of a stay outweigh the potential benefits of waiting for the reexamination to be completed.

## 2. Reexamination of the Patents in Suit

Fresenius's next asserted basis for a stay is the reexamination of the patents in suit. Fresenius filed requests for *inter partes* reexamination of all of the patents at issue in this case in July 2008. Although the requests have yet to be granted, Fresenius points to statistics from the PTO indicating that few requests for *inter partes* review have been rejected in recent years. (Defs.' Mem., Ex. J.)[1] Therefore, the Court assumes for the purposes of this motion that the requested reexaminations will take place. Fresenius argues that this case should be stayed pending the outcome of the reexaminations, noting that the same patents are at issue in both proceedings and that many of the issues that will be litigated administratively before the PTO will need to be addressed before this Court as well. Because the patents will be reexamined in *inter partes* proceedings, meaning that both Baxter and Fresenius will participate, Fresenius will

---

[1] For example, in 2007, 118 requests were granted and only 1 was rejected. (Defs.' Mem., Ex. J.)

- 8 -

be statutorily estopped from arguing that the patents are invalid in this Court if they are deemed valid by the PTO. *See* 35 U.S.C. § 315(c). For this reason, courts have recognized that "an *inter partes* reexamination can have no other effect but to streamline ongoing litigation," providing a "compelling reason to grant a stay." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006.)

The Court finds that the potential benefits accruing from a stay pending the *inter partes* reexamination of the patents in suit are greater than the benefits to be expected from the *ex parte* reexamination of the California patents discussed above. Because the same patents are at issue, the PTO's reexamination is certain to address issues that will arise in this case, while Fresenius's participation in the PTO proceedings guarantees streamlining preclusive effects regardless of the outcome. However, a stay pending the resolution of the *inter partes* reexamination proceedings also presents a risk of extreme delay. Baxter has presented the Court with statistics contained in a study by the Institute for Progress that suggest that the average *inter partes* reexamination, including appeals, can be expected to last approximately six and one-half years, and may take as long as eight years. (Resp., Ex. 6.) This time frame is made more uncertain by the fact that, since the introduction of *inter partes* reexamination proceedings more than ten years ago, no case has proceeded through all of the possible steps of the reexamination process. (*Id.*) While Fresenius is correct that "[t]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice," *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04-03715, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006), the Court finds that a delay that is not merely lengthy but potentially indefinite is prejudicial to the non-moving party. Furthermore, the potential efficiency of having some or all of the issues in this case resolved by the PTO must be

- 9 -

heavily discounted in light of the fact that it is uncertain when, if ever, this resolution would come. For these reasons, the Court finds that a stay pending resolution of the *inter partes* reexaminations of the patents in suit would be inappropriate.

## B.      The Appeal of the California Case

Fresenius argues in the alternative that this case should be stayed pending the Federal Circuit's decision on Fresenius's appeal from the judgment in the California litigation. One patent in the California case is an "ancestor" to the patents in suit, while another is listed as a "related" patent to each of the patents in suit. Therefore, as discussed above, the validity of the California patents may be relevant to the validity of the patents in the instant case. In addition, one issue on appeal is the construction of the term "time variable profile," which appears in two of the four patents in suit here. Therefore, it is likely that the Federal Circuit's decision on this issue will have a significant impact on claim construction for at least two of the patents in this case. A third issue on appeal is the alleged obviousness of the California patents. The resolution of this issue will require the Federal Circuit to examine the prior art in the field of hemodialysis, the same technical field that is at issue in this case. For these reasons, the Court finds that a stay pending the Federal Circuit's decision will confer many of the benefits of a stay pending PTO reexamination, streamlining the case, simplifying the issues, and saving the resources of the parties and the Court while important issues are resolved by a tribunal with greater expertise in the area of patents.

Furthermore, unlike the PTO reexamination process, the resolution of the appeal can be expected within a relatively well-defined period of time. The parties agree that the case is

already fully briefed and that oral argument is expected in December 2008. It is therefore reasonable to assume that the Federal Circuit will decide the case in the first half of 2009. The Court, in its discretion, finds that the likely benefits of waiting for the Federal Circuit's resolution of the appeal in the California case, coupled with the relatively short time frame within which a decision can be expected, makes a stay appropriate in this case.

Baxter's argument that it will be unduly prejudiced by Fresenius's continued infringement of its patents during the stay period is not persuasive. The fact that the district court in the California case granted Baxter's request for permanent injunctive relief does not necessarily mean that Baxter will prevail on its claims in this case, which are based on different patents. A stay in this case will not affect Baxter's right to prevent Fresenius from infringing the California patents under the terms of the injunction entered in the Northern District of California. As for the patents in this case, Baxter has yet to prove any infringement, or even a likelihood of success on the merits, and therefore has no grounds to argue that it will be unduly prejudiced if the case is stayed pending a Federal Circuit decision that may materially impact the merits of the case. Finally, the Federal Circuit is likely to decide the appeal in the relatively near future, making it unlikely that Baxter's patents (and its claim for injunctive relief) will expire before the case can be litigated. It is even possible that the Federal Circuit's decision will speed up the resolution of this case. Therefore, the Court finds that a stay is appropriate pending the Federal Circuit's decision on Fresenius's appeal of the California case.

### III. **Conclusion**

For the reasons set forth above, the Court grants Fresenius's motion to stay. All proceedings in this case are hereby stayed pending the Federal Circuit's resolution of Fresenius's appeal in *Fresenius USA, Inc. v. Baxter Int'l Inc.*, Federal Circuit case number 2008-1306, -1331.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: September 25, 2008.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Blanche M. Manning within ten (10) days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b). Failure to object will constitute a waiver of objections on appeal.